Kathryn E. STEVEN, Administratrix of the Estate of George A. Steven, deceased, Plaintiff-Appellant,

v.

ROSCOE TURNER AERONAUTICAL CORPORATION, Defendant-Appellee.

No. 14051.

United States Court of Appeals Seventh Circuit.

Oct. 31, 1963.

James H. Ferguson, Bloomington, Ind., Gerald H. Gottlieb, Beverly Hills, Cal.,

Phillip Melangton, Jr., Indianapolis, Ind., for appellant.

William F. Welch, John I. Bradshaw, Jr., Marshall E. Williams, Cecil A. Taylor, French M. Elrod, Elrod, Taylor & Williams, McHale, Cook, Welch & McKinney, Indianapolis, Ind., for defendant-appellee.

Before HASTINGS, Chief Judge, and DUFFY and MAJOR, Circuit Judges.

HASTINGS, Chief Judge.

This is an action by plaintiff Kathryn E. Steven, administratrix of the estate of George A. Steven, deceased, against defendant Roscoe Turner Aeronautical Corporation (RTAC) for the alleged wrongful death of plaintiff's husband, George A. Steven.

Plaintiff's decedent was killed as the result of an airplane crash. The airplane was chartered by deceased and others from Turner Aviation Corporation (TAC).

Plaintiff alleged that TAC was an agent of RTAC. She contended in the alternative that TAC was a mere corporate instrumentality of RTAC.

The district court entered an order sustaining RTAC's motion for summary judgment. From the resulting summary judgment, plaintiff appealed.

RTAC is an Indiana corporation, organized in 1931. Its principal place of business is Wier Cook Airport, Indianapolis, Indiana. It operates an aircraft sales and service business and holds a day and night air taxi operating certificate, for the carrying of passengers, issued by the Civil Aeronautics Authority. There are eight persons on the board of directors of RTAC. Roscoe Turner is chairman and two of the other seven are Madonna Turner and French Elrod. Madonna Turner is also president of RTAC.

TAC was incorporated in Indiana in 1953 by Roscoe Turner, French Elrod and Cecil Taylor. Roscoe Turner is president and Madonna Turner secretary-treasurer. TAC's principal place of business is Hulman Field, Terre Haute, Indiana. It engages in selling and servicing aircraft and carrying passengers for hire. Its air taxi certificate was issued in December, 1955, and authorized daytime flights only.

Richard O. Meserve was employed as general manager of TAC in December, 1953 by Roscoe and Madonna Turner. In 1955, Meserve became vice president of TAC.

From December, 1955 through March, 1957, TAC employed one pilot and owned one single engine airplane. When needed, additional airplanes and pilots were sent to TAC by RTAC. Roscoe Turner instructed Meserve to use only aircraft owned by TAC or RTAC.

On March 6, 1957, at approximately 4:30 P.M., a scheduled flight of Lake Central Airlines to Chicago was canceled at Terre Haute, Indiana. A group of stranded passengers was anxious to get to Chicago that evening, among them plaintiff's decedent. Plaintiff's decedent and five others went to the office of TAC to inquire about a charter flight. A twin engine aircraft capable of carrying all six persons was requested. Meserve quoted them the price of such aircraft. The group considered this price too high since they would have to pay the additional expense of the flight of the plane from RTAC in Indianapolis to Terre Haute. It was finally agreed that the six passengers would be transported to Chicago by TAC, three each in two single engine planes.

Meserve piloted one aircraft which flew to Meigs Field in Chicago and landed at 7:15 P.M. without incident.

The second airplane was flown by Vernon Hux who did not have a license to carry passengers. Both flights took place at night in violation of TAC's air taxi certificate.

The airplane piloted by Hux crashed near Grant Park, Illinois, at approximately 7:10 P.M., killing plaintiff's decedent. The airplane had been rented by TAC from Wremco Enterprises, Inc., an Indiana corporation, whose only asset was this airplane. Meserve and Hux were officers and shareholders of Wremco.

Meserve arranged for the rental. Neither Roscoe Turner nor RTAC had knowledge of the existence of Wremco and Turner had instructed Meserve to use only airplanes belonging to RTAC and TAC.

Plaintiff originally filed suit against RTAC, TAC, Wremco Enterprises, Inc., Vernon Hux and Richard Meserve. RTAC was voluntarily dismissed from this suit on plaintiff's motion.

On February 26, 1959, plaintiff commenced the present action against RTAC as sole defendant, in the Circuit Court of Cook County, Illinois. RTAC obtained removal, based on diversity of citizenship, to the United States District Court for the Northern District of Illinois. Thereafter, the case was transferred to the United States District Court for the Southern District of Indiana, where it was consolidated with the original case against TAC, et al.

On May 18, 1962, RTAC filed a motion for summary judgment. It contended that no genuine issue as to any material fact was present and therefore it was entitled to judgment as a matter of law.[1] In support of its motion, RTAC filed affidavits of Madonna Turner, Roscoe Turner and Meserve.

In response to such motion, plaintiff offered in evidence a copy of the transcript of testimony by Roscoe Turner taken at a hearing before the Civil Aeronautics Board (CAB), the decision of the CAB, depositions of Roscoe Turner and Meserve, affidavits of counsel and corporate records of Wremco, TAC and RTAC.

The copy of the transcript of testimony by Roscoe Turner before the CAB was filed by plaintiff on June 28, 1962. The CAB hearing had been held in October, 1957, and resulted in the revocation of TAC's air taxi certificate. RTAC was not a party to this proceeding.

On July 7, 1962, RTAC filed a motion to strike this copy, giving as a reason, *inter alia,* its lack of certification. This motion was sustained by the district court on August 15, 1962.

On August 24, 1962, plaintiff filed a request for extension of time to allow plaintiff to secure a certification of the transcript from the CAB. The district court granted plaintiff's request. Plaintiff had previously been directed to file depositions and other writings on or before August 24, 1962. The date was reset for September 5, 1962 so that plaintiff might have time to obtain the required certification.

The hearing on motion for summary judgment was held September 5, 1962. Plaintiff introduced in evidence business documents which were obtained by a subpoena duces tecum served to RTAC on August 31, 1962. These documents were for the years 1953 to 1957, for both RTAC and TAC. They were the corporate minutes and records of stockholders' meetings, federal income tax returns, Indiana gross income tax returns, employment security returns to the State of Indiana, social security forms, annual corporate reports to the Secretary of the State of Indiana and payroll records and time cards of Meserve, Donald McClure, mechanic for both RTAC and TAC, Paul Schlundt, chief pilot for RTAC and Dale Mason, vice president and member of the board of directors of TAC. RTAC produced as many of these documents as it could obtain in the short period of time between receiving the subpoena and the hearing.

Plaintiff had not read these documents prior to the hearing. The court granted

[1]. Rule 56(c) Federal Rules of Civil Procedure, 28 U.S.C.A., provides:

"(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

a recess for this purpose. Plaintiff had not obtained certification of the copy of the CAB transcript. Plaintiff moved for a second extension of time for the purpose of obtaining such certification, adducing additional evidence from witnesses and obtaining other evidence. Although this motion was denied, the court read and considered the CAB copy.

The district court allowed plaintiff to conduct oral examinations at the hearing. Plaintiff questioned Madonna Turner, Schlundt and McClure.

After considering the aforementioned evidence, the district court entered summary judgment in favor of RTAC, stating " * * * that there was no genuine issue as to the fact that Turner Aviation Corporation was a separate corporation and was not so organized, managed, or controlled as to constitute a mere instrumentality or alter ego of Roscoe Turner Aeronautical Corporation * * *."

The evidence, except the testimony of Roscoe Turner before the CAB tended to show the following in respect to control of TAC by RTAC. Roscoe and Madonna Turner owned approximately 70% of the stock of TAC; three of the five directors and two of the three incorporators of TAC were directors or officers of RTAC; on occasion, a mechanic from RTAC would do work for TAC and be paid for such work by TAC; and on occasion, pilots from RTAC would pilot charter planes of RTAC for TAC. These pilots were paid by RTAC which would then bill TAC for use of the planes and services of its pilots.

The testimony of Roscoe Turner at the CAB hearing is substantially as follows in respect to control of TAC by RTAC. Meserve's managerial acts were subject to approval by Roscoe Turner; Roscoe Turner, Madonna Turner or Mason made one or two trips a week to TAC to help Meserve supervise; and Meserve had no authority to employ pilots for TAC without Roscoe Turner's approval.

The issue presented to this court is whether the evidence, relating to TAC being an agent or instrumentality of RTAC, is such that RTAC is entitled to judgment as a matter of law, there being no genuine issue as to any material fact.

█ It is clear that no genuine issue is presented by the allegation in the complaint that TAC was an agent of RTAC in the transactions which resulted in the fatal flight. There is no evidence that RTAC expressly made TAC its agent. An often cited authority in the area of parent and subsidiary corporation relationships states that "[e]xcept in cases of express agency * * * the Instrumentality Rule alone furnishes a practicable medium to break down the statutory immunity * * *. Indeed, a sincere application of agency rules would largely destroy the protection afforded stockholders by incorporation." Powell, Parent and Subsidiary Corporations 94 (1931).

We hold that the district court properly granted summary judgment on the issue of express agency.

Plaintiff's remaining contention is that a genuine issue exists as to whether TAC was an instrumentality of RTAC.

█ It is well established that " * * * the parent corporation will be responsible for the obligations of its subsidiary when * * * the subsidiary has become its mere instrumentality." Taylor v. Standard Gas & Electric Co., 10 Cir., 96 F.2d 693, 704 (1938), rev'd on other grounds, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (quoting Powell, supra at 8).

█ In order to establish that a subsidiary is the mere instrumentality of its parent, three elements must be proved: control by the parent to such a degree that the subsidiary has become its mere instrumentality; fraud or wrong by the parent through its subsidiary, e. g., torts, violation of a statute or stripping the subsidiary of its assets; and unjust loss or injury to the claimant, such as insolvency of the subsidiary. Fisser v. International Bank, 2 Cir., 282 F.2d 231, 238 (1960); Lowendahl v. Baltimore & O. R. Co., 247 App.Div. 144, 287 N.Y.S. 62, 76 (1936), aff'd, 272 N.Y. 360, 6 N.E.2d 56; Powell, supra at 4–6.

In determining whether the requisite degree of control is maintained by the parent corporation, many factors are relevant. It is the presence of these factors in the proper combination which is controlling. Factors generally considered by courts are as follows:

"(a) The parent corporation owns all or most of the capital stock of the subsidiary.

"(b) The parent and subsidiary corporations have common directors or officers.

"(c) The parent corporation finances the subsidiary.

"(d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

"(e) The subsidiary has grossly inadequate capital.

"(f) The parent corporation pays the salaries and other expenses or losses of the subsidiary.

"(g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

"(h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.

"(i) The parent corporation uses the property of the subsidiary as its own.

"(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest.

"(k) The formal legal requirements of the subsidiary are not observed." Taylor v. Standard Gas & Electric Co., supra, 96 F.2d at 704–705 (quoting Powell, supra at 9).

Plaintiff's evidence, other than the copy of the CAB hearing, viewed in the light most favorable to her, establishes only ownership by Roscoe and Madonna Turner of 70% of the stock of TAC and substantial identity of officers and directors in the two corporations.

While stock control and common directors and officers are generally prerequisites for application of the instrumentality rule, yet, they are not sufficient by themselves to bring the rule into operation. Costan v. Manila Electric Co., 2 Cir., 24 F.2d 383, 384 (1928); Berkey v. Third Ave. Ry. Co., 244 N.Y. 84, 155 N.E. 58, 50 A.L.R. 599 (1926); Lowendahl v. Baltimore & O. R. Co., supra, 287 N.Y.S. at 72; Powell, supra at 12. Such factors are common business practice and exist in most parent and subsidiary relationships.

The only other evidence on the issue of control is the copy of testimony by Roscoe Turner at the CAB hearing. The district court struck this copy due to lack of certification, although it subsequently read and considered it.

We agree with the district court that an uncertified copy of testimony is inadmissible in a summary judgment proceeding. As stated by Judge Schnackenberg in United States v. Tuteur, 7 Cir., 215 F.2d 415, 417 (1954):

"There was attached to the motion as an exhibit what purports to be a transcript of testimony given by respondent before the United States Naturalization Examiner at Portland, Oregon, on February 8, 1945.

"This document is not sworn to in any way. It is not an affidavit. Respondent contends that it is not proper to consider it in support of the motion for summary judgment. We agree. * * *"

RTAC contends that the CAB testimony would be hearsay and thus inadmissible even though certified, since RTAC was not a party to the CAB proceeding and thus had no opportunity to cross-examine. While this issue is not before us, there is authority that certified

testimony may be admissible in a *summary judgment proceeding*. 6 Moore, Federal Practice ¶ 56.22, at 2333, 2334 (2d ed. 1953). Certified testimony complying with Rule 56(e), Federal Rules of Civil Procedure, 28 U.S.C.A.[2] has the same evidentiary value and safeguards as affidavits provided for in Rule 56(e), supra, which do not afford an opportunity for cross-examination. See 6 Moore, supra at 2334 n. 45. We do not reach the question of admissibility of a certified transcript of testimony at a trial on the merits and express no opinion thereon.

At the hearing on motion for summary judgment, plaintiff moved for additional time to obtain certification. The district court did not abuse its discretion in denying this request. Plaintiff's earlier request for an extension of time had been granted, giving her twelve additional days. With this extension of time, plaintiff had 8½ weeks after RTAC's motion to strike was filed and ten weeks after the CAB copy was filed, in which to obtain certification. No reason for her failure to obtain such certification was given.

The district court granted plaintiff one extension of time, granted a recess so plaintiff could read the documents she failed to subpoena until five days prior to the hearing and allowed plaintiff to orally examine witnesses at the hearing. In addition to this, the district court read and considered the inadmissible CAB testimony. It appears that plaintiff was given a reasonable opportunity to show the existence of a genuine issue concerning control of TAC by RTAC.

Assuming, *arguendo*, that the district court was justified in considering the stricken CAB transcript, such testimony does not raise a genuine factual issue under the instrumentality rule. This testimony by Roscoe Turner showed merely the sound business practice of aiding Meserve in the performance of his managerial duties for TAC.

Plaintiff introduced into evidence at the hearing the various business documents, previously listed, of RTAC and TAC for the years 1953 to 1957. Certainly, if some of the foregoing requisite control factors existed indicating control of TAC by RTAC, they would appear from an examination of these documents. On the contrary, these documents showed that TAC paid its own salaries and expenses, RTAC did not use the property of TAC as its own, TAC was not described as a department or division of RTAC, RTAC did not own any stock in TAC and TAC observed the technical formalities legally incident to the operation of a corporation. We do not have here the usual case of the parent corporation being a shareholder of its subsidiary.

At the hearing, plaintiff was denied a second extension of time for the purpose, *inter alia*, of obtaining additional evidence. The record shows that plaintiff had sixteen weeks between the date RTAC filed its motion for summary judgment and the date of the hearing in which to obtain evidence. Plaintiff failed to specify in any particular the nature and character of the evidence she sought to produce. There was every appearance of a desire to conduct a fishing expedition. The district court did not abuse its discretion in denying the second request for additional time.

As we have noted, plaintiff seeks to recover from RTAC under the theory that TAC was the agent of RTAC. Rhetorical paragraph 2 of her complaint alleges:

"On said date and prior thereto said defendant maintained an office for charter flight service at Hulman Field, Terre Haute, Indiana; that the business of said defendant at said office was conducted under the name of a corporation of different identity; that said corporation of different identity was, in fact, an agent of the defendant wholly de-

2. "(e) Form of Affidavits; Further Testimony. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * *"

pendent on the defendant, ROSCOE TURNER AERONAUTICAL CORPORATION, a corporation, and said defendant maintained, controlled, supervised and, in fact, performed the said charter flight business at Hulman Field, Terre Haute, Indiana."

 Our examination of the record considered by the district court leads us to the conclusion that there was no genuine issue of a material fact relevant to the issue of agency either on the question of factual or express agency or on the question of the requisite interdependent relationship under the corporate instrumentality rule. The district court did not err in granting defendant's motion for summary judgment.

The judgment of the district court is affirmed.

Affirmed.