**BERNARDIN, INC., Plaintiff-Appellee,**

v.

**MIDLAND OIL CORPORATION, Defendant-Appellant.**

No. 74–1846.

United States Court of Appeals, Seventh Circuit.

Argued May 19, 1975.

Decided July 31, 1975.

Jay C. Baker, Tulsa, Okl., for defendant-appellant.

Joseph A. Yocum, Evansville, Ind., for plaintiff-appellee.

Before CASTLE, Senior Circuit Judge, BAUER, Circuit Judge, and EAST *, Senior District Judge.

EAST, Senior District Judge:

## THE PARTIES

The plaintiff-appellee Bernardin, Inc. (hereinafter Bernardin) is an Indiana corporation with its principal place of business in Evansville, Indiana. Bernardin manufactures metal closures or caps for glass jars.

The non-appealing defendant Zestee Foods, Incorporated (hereinafter Zestee) is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma.[1] Zestee was a processor of assorted food stuffs, such as mayonnaise, mustard, and the like.

The defendant-appellant Midland Oil Corporation (hereinafter Midland) is a Delaware corporation with its principal place of business in Tulsa, Oklahoma. Midland is engaged in the oil and gas business in Oklahoma as well as with other enterprises and holdings, including the organization of and continued total ownership of the capital stock of Zestee.

## THE APPEAL

Midland appeals from the judgment entered in the District Court against it and Zestee jointly in favor of Bernardin for the amount of $26,181.22 plus accrued interest. We affirm.

## ASSIGNMENTS OF ERROR

Midland asserts four assignments of error. The District Court erred in:

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. There is a record discrepancy in the corporate name of Zestee; however, there is no dispute over the corporation's true identity as above.

(1) Failing to deduct from the indebtedness sued upon two checks submitted by Zestee and negotiated by Bernardin and two credit memos from Bernardin to Zestee, all of which were introduced into evidence and undisputed;

(2) Failing to honor an agreement and stipulation between the parties established by the negotiation by Bernardin of a check specifying the remaining account balance.

(3) Overruling Midland's motion to dismiss for lack of jurisdiction over Midland; and

(4) Imposing upon Midland liability for Zestee's account with Bernardin.

## THE FACTS AND DISTRICT COURT CAUSE

The pertinent facts as found by the District Court are:

Bernardin and Zestee "entered into what is known in the closure trade as a 'min-max order.' The min-max order is a perpetual inventory arrangement whereby Bernardin agreed to manufacture and maintain in its warehouse [in Evansville] a specific number of closures for Zestee. Zestee would pick up the closures [at the warehouse] and use them in Oklahoma City. Bernardin would then replace the inventory used so that a constant number of caps was maintained. Monthly reports from Bernardin and Zestee would be compared, with Zestee being billed for the caps used. Under this arrangement Bernardin agreed to keep 300,000 to 600,000 caps on hand.

"Zestee placed the order in May, 1969. Bernardin committed a substantial amount of metal to the manufacture of the caps. The metal was lithographed according to Zestee's instructions. A number of caps were produced and Zestee picked them up. However, in the fall of 1969 Zestee decided to discontinue the '86' size caps for economic reasons. Zestee canceled the order but agreed to use as best they could the lithographed metal which Bernardin had remaining.

By June, 1970 Zestee had used only about 75,000 caps while Bernardin had about 600,000 caps in process or finished.

"On or about July 4, 1970, Zestee's processing plant burned. As a result of the fire, Midland, which owned 100 percent of the stock of Zestee, decided to liquidate Zestee. Midland appointed Gene V. Daubert, a Midland vice president, as the liquidator of Zestee. Bernardin, interested in settling the Zestee account, contacted Daubert on or about September 23, 1970. As a result, Daubert agreed to make semi-monthly payments to Bernardin until the account was paid in full. Prior to the time the first payment was due Daubert resigned his Midland post and Glenn Cone was appointed as the liquidator. Certain payments were subsequently made by Zestee, but a substantial balance remained unpaid."

Whereupon Bernardin instituted these proceedings. The complaint is couched in two counts, but here we are concerned only with the first which seeks joint recovery from Zestee and Midland "for goods either sold and delivered to them in Evansville, Indiana, or set aside to their account in warehouse space by [Bernardin] in Evansville, Indiana, as unique and identifiable goods specially manufactured for [Zestee] and not suitable for sale to others in the ordinary course of [Bernardin's] business between August 8, 1969, and September 23, 1970."

The count further alleges that Bernardin performed its part of the contract and attempted to minimize damages by reselling the goods as scrap or seconds. The attempts to resell resulted in sales in the amount of $12,840.01. The amount was credited to Zestee's account. Further sales are unlikely because of the unique size and character of the caps.

Following an evidentiary trial without a jury, the District Court found Zestee to be indebted to Bernardin upon the account pursuant to the provisions of Burns Ind.Stat.Ann. §§ 19–2–709 and 19–2–501(1)(b) (1964), IC 1971, §§ 26–1–2–709, 26–1–2–501(1)(b) in the net amount of $26,186.12, and concluded that

Zestee as the dominated subsidiary corporation and Midland as the dominating and controlling parent corporation were one and the same entity and jointly liable to Bernardin on the account. The judgment was entered accordingly.

## DISCUSSION

*Assignment 1:*

■ We have perused the record evidence and conclude that the evidence, while perhaps subject to different inferences or impressions, nevertheless supports the District Court's findings of fact and settlement of the amount of the account held by Bernardin. Those findings are not clearly erroneous. Fed.R. Civ.P. 52(a). The District Court's conclusion of Zestee's liability therefor under the Indiana statutory provisions was correct.

*Assignment 2:*

■ Midland claims that a check from the liquidator of Zestee tendered in partial payment of the Bernardin account bore the notation: Balance remaining $10,000.00. Further Midland claims that Bernardin through the negotiation of the check should be estopped from claiming a greater amount. This contention is without merit.

The District Court made no specific finding regarding an agreed accord of Zestee's indebtedness to Bernardin by reason of the notation of the remaining balance upon the check and Bernardin's negotiation thereof. We are satisfied, however, that a general negative finding and a complete rejection of the contention is implicitly included in the District Court's findings and settlement of the account and in the rejection of Count 2 based upon a stipulated settlement of the account. The record is devoid of any evidence of a mutually agreed or assented to accord or other fixed amount due on the account. We conclude that the District Court did not err in the context of the assignment.

*Assignment 3:*

■ Midland's contention of a lack of jurisdiction by the District Court is wholly without merit; however, we comment that the complaint plainly and succinctly alleges the jurisdiction of the District Court over Midland and Zestee. The proof established that jurisdiction by Zestee's entry into and major contacts within the state of Indiana in connection with the transaction with Bernardin. The ultimate fact that Zestee and Midland were one and the same entity fixes the jurisdiction over Midland.

*Assignment 4:*

The District Court in reaching the conclusion that in equity Midland should be held liable for Zestee's obligation to Bernardin in the amount fixed relied upon the doctrine of "piercing the corporate veil" as enunciated by this court in *Steven v. Roscoe Turner Aeronautical Corp.*, 324 F.2d 157 (7th Cir. 1973), [hereinafter cited as Turner] approved and followed in *Allegheny Airlines, Inc. v. United States*, 504 F.2d 104 (7th Cir. 1974).

Basically, *Turner* teaches at 160 and 161 that it is:

"[W]ell established that ' * * * the parent corporation will be responsible for the obligations of its subsidiary when * * * the subsidiary has become its mere instrumentality.' [Citing authorities].

"In order to establish that a subsidiary is the mere instrumentality of its parent, three elements must be proved: control by the parent to such a degree that the subsidiary has become its mere instrumentality; fraud or wrong by the parent through its subsidiary, *e. g.,* torts, violation of a statute *or stripping the subsidiary of its assets; and unjust loss or injury to the claimant, such as insolvency of the subsidiary.* [Citing authorities].

"In determining whether the requisite degree of control is maintained by the parent corporation, many factors are relevant." (Italics supplied).

*Turner* then sets forth some eleven factors lettered (a) through (k) which are generally considered by the courts as controlling.

■ We here note that there is record evidence which supports in whole or in part eight of those factors, namely:

(a) The parent corporation owns all or most of the capital stock of the subsidiary.

(b) The parent and subsidiary corporations have common directors or officers.

(c) The parent corporation finances the subsidiary [joined in the mortgage obligation on Zestee's building].

(d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

(e) The subsidiary has grossly inadequate capital [not now engaged in any business operation and occupies Midland's address].

(f) The parent corporation pays the salaries and other expenses or losses of the subsidiary. [Vice President Raider].

(i) The parent corporation uses the property of the subsidiary as its own [collected insurance and liquidation proceeds].

(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest. [Vice President Raider].

We have been cited no other authority from this court or elsewhere that tends to erode or in anywise impeach those basic concepts and rationale of *Turner.* The District Court applied those basic concepts to the facts found and determined in its judicial discretion that the equities among the parties required and dictated Bernardin's recovery from Midland which had taken over and acquired all that Zestee had had to offer its creditors. We here repeat the District Court's sage reasoning and conclusions:

"The question then becomes, against whom should judgment be entered? Midland and Zestee are both corporations, but all of Zestee's stock is owned by Midland . . . The evidence introduced at the trial of this cause demonstrates that Zestee is no longer a viable corporation. Midland, as the sole shareholder, directed one of its own officers to collect the insurance proceeds and sell the assets of Zestee. This was done, and the cash received on liquidation of the assets has been paid to other creditors. To permit Midland to escape Zestee's creditors by retaining Zestee as a shell would clearly be inequitable and unjust. Factors such as the stock ownership and the decision to liquidate and maintain a shell establish a situation where the corporate veil should be pierced . . . Therefore, the Court finds that Midland and Zestee are in essence one and the same, and that each in liable for the amount due Bernardin." Citing *Turner* and 38 A.L.R.3d 1102.

We conclude that the District Court's findings of fact are not clearly erroneous and further that the District Court's conclusion of Midland's liability for Zestee's indebtedness to Bernardin was proper at law and in equity.

The judgment of the District Court appealed from is affirmed.

Affirmed.