C M CORPORATION, Continental Manors, Inc. and Commercial Management, Inc., Plaintiffs–Appellants,

v.

OBERER DEVELOPMENT COMPANY and Gold Key Builders, Inc., Defendants–Appellees.

No. 79–2510.

United States Court of Appeals, Seventh Circuit.

Argued May 27, 1980.

Decided Oct. 7, 1980.

Rehearing and Rehearing En Banc Denied Dec. 24, 1980.

James A. Cherney, Chicago, Ill., for plaintiffs–appellants.

Stanley A. Walton, Chicago, Ill., for defendants–appellees.

Before SWYGERT, Circuit Judge, KILKENNY, Senior Circuit Judge *, and WOOD, Circuit Judge.

KILKENNY, Senior Circuit Judge.

## STATEMENT OF THE CASE

This is an appeal in a diversity action from a judgment notwithstanding the verdict in favor of appellees and against appellants. Appellants, C M Corporation, Continental Manors, Inc. and Commercial Management, Inc., brought the action to recover damages for breach of contract and breach of warranty in the design and construction of three nursing homes. Named as defendants in the amended complaint were the appellees Gold Key Builders, Inc., Oberer Development Company, Creative Construction Company, and George R. Oberer. Creative Construction Company was dismissed from the case. Personal service was never obtained on George Oberer and he never formally appeared.

The issue presented at trial was whether the corporate veil between Gold Key Builders and Oberer Development Company should be pierced. Prior to trial, all the parties agreed that if the jury found it proper to pierce the corporate veil, the entire dispute between appellants and appellees would be referred to arbitration. Consequently, the jury was not presented with any issues on the substantive breach of contract claim or of damages.

At the close of all the evidence, appellees moved for a directed verdict, but the court reserved ruling on the motion. Following the instructions to the jury, the court submitted the issues to the jury on two special interrogatories; the first asking whether the corporate existence of Gold Key Builders was pierced during the relevant period, and the second asking whether Oberer Development Company was responsible for the obligations of Gold Key Builders and its predecessors. The jury answered each interrogatory in the affirmative.

Appellees forthwith moved for judgment notwithstanding the verdict. After extensive briefing the district court granted the appellees' motion and entered judgment accordingly. It is from this judgment that appellants appeal.

## THE CORPORATIONS

Although raising one basic issue, this case is complicated by the number of corporations involved at one time or another. A brief description of the corporations and their relationships is required for an understanding of the issue.

Appellant C M Corporation (CM) owns the other appellants, Continental Manors, Inc. and Commercial Management, Inc. CM and its subsidiaries are in the business of offering expert advice to communities wishing to construct nursing homes. They also manage nursing homes for various clients.

CM is seeking damages from Gold Key Builders and Oberer Development Company in connection with the construction of three nursing homes; one in Piper City, Illinois, another in Newman, Illinois, and the third in West Liberty, Iowa. Because Gold Key

* The Honorable John F. Kilkenny, Senior United States Circuit Judge for the Ninth Circuit Court of Appeals, sitting by designation.

Builders is insolvent, CM is attempting to pierce the corporate veil and hold Oberer Development liable for the obligations of its subsidiary, Gold Key Builders. It is important to note here that Gold Key Builders did not become a subsidiary of Oberer Development until after 1976, and after the projects were completed.

Gold Key Builders has not always been known by that name. In 1972, when the Piper City Project began, and in 1973, when the Newman Project started, Gold Key was known as Enco, Inc. By 1974, at the time the West Liberty Project was commenced, the name had been changed to Anco, Inc. Subsequently, Anco became Gold Key Builders. There is no question that Gold Key Builders is responsible for the obligations of Enco and Anco. The dispute is over whether Oberer Development Company can be held liable for the obligations of Gold Key Builders.

Enco and Anco contracted to build the three nursing home projects. Although not a party to this action, Creative Construction Company is in the picture because it contracted to design the Newman, Illinois Project. In 1976, Creative was merged into Oberer Development Company.

All these corporations have or have had certain features in common. All are or were among a group of ten to fifteen companies owned by George Oberer and members of his family. This group of companies was sometimes loosely referred to as "Oberer Enterprises." However, Oberer Enterprises was never a legal entity. Consequently, it could not be a party to this action. The corporations also shared some common directors, an occasional common officer, and a common Dayton, Ohio address.

## ISSUE

Because the district court entered judgment notwithstanding the jury's verdict, the question before us is whether the evidence, together with all the inferences which may reasonably be drawn therefrom, when viewed in the light most favorable to appellants is insufficient to support the verdict piercing the corporate veil between Gold Key Builders and Oberer Development Company. *Farmers State Bank of Valparaiso v. Dravo Corp.*, 321 F.2d 38 (CA7 1963); *Sparrow v. Yellow Cab Co.*, 273 F.2d 1 (CA9 1959), *rehearing denied* (1960).

## THE LAW

■ All parties contend, and we agree, that our analysis is controlled by the law announced in *Steven v. Roscoe Turner Aeronautical Corp.*, 324 F.2d 157 (CA7 1963). In *Turner*, this court held that a parent corporation would be responsible for the obligations of its subsidiary when the subsidiary has become its mere instrumentality. In order to establish that a parent should be held liable for the obligations of its subsidiary, three elements must be proved: "control by the parent to such a degree that the subsidiary has become its mere instrumentality; fraud or wrong by the parent through its subsidiary, e. g., torts, violation of a statute or stripping the subsidiary of its assets; and unjust loss or injury to the claimant, such as insolvency of the subsidiary." *Roscoe Turner, supra*, at 160.

We have reiterated these elements several times, and it is clear that each one must be proven before the doctrine will be imposed. *Matter of Bowen Transports, Inc.*, 551 F.2d 171, 179 (CA7 1977); *Avco Delta Corp. Canada, Ltd. v. United States*, 540 F.2d 258, 264 (CA7 1976); *Bernardin, Inc. v. Midland Oil Corp.*, 520 F.2d 771, 774 (CA7 1975); *Allegheny Airlines, Inc. v. United States*, 504 F.2d 104, 112 (CA7 1974), *cert. denied*, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 470 (1975).

In determining whether the requisite degree of control has been maintained by the parent corporation, we have said that many factors are relevant, and that it is the presence of these factors in proper combination which would lead to a piercing of the corporate veil separating a corporation from its owner or owners. Among the factors considered controlling are:

"(a) The parent corporation owns all or most of the capital stock of the subsidiary.

"(b) The parent and subsidiary corporations have common directors or officers.

"(c) The parent corporation finances the subsidiary.

"(d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

"(e) The subsidiary has grossly inadequate capital.

"(f) The parent corporation pays the salaries and other expenses or losses of the subsidiary.

"(g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

"(h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.

"(i) The parent corporation uses the property of the subsidiary as its own.

"(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest.

"(k) The formal legal requirements of the subsidiary are not observed." *Roscoe Turner, supra*, at 161, quoting from *Taylor v. Standard Gas & Electric Co.*, 96 F.2d 693 at 704–05 (CA10 1938), *rev'd on other grounds*, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939) (quoting Powell, Parent and Subsidiary Corporations at 9 (1931)).

■ Stock control and common officers and directors are generally prerequisites to piercing the corporate veil. However, those factors are not sufficient by themselves to invoke the doctrine for "such factors are common business practice and exist in most parent and subsidiary relationships." *Roscoe Turner, supra* at 161.

■ We recognize that the equitable doctrine of piercing the corporate veil is not limited to the parent–subsidiary relationship. The separate identities of affiliated corporations owned by the same parent may be disregarded under proper circumstances. *Matter of Bowen Transports, Inc.*, 551 F.2d 171, 179 (CA7 1977). In any event, it must be shown that another entity *actually dominated a sham corporation*. *Bowen Transports, supra*, at 179; *Williams v. McAllister Bros., Inc.*, 534 F.2d 19 (CA2 1976).

## ANALYSIS

■ When the law is applied to the facts of this case, viewed in the light most favorable to appellants, it is apparent that no reasonable jury, having been properly instructed in the law, could have rendered the verdict it did. An examination of the evidence introduced at trial reveals that there is no evidence that Gold Key Builders or its predecessors were shells or sham corporations during the period when appellants and their assignors were dealing with them. Nor is there any evidence of wrong suffered by appellants.

Therefore, at least two elements of appellants' case required by *Roscoe Turner* were not supplied. It must be conceded that appellants' argument is ingenious; but it is ingenious because it succeeded in confusing the issues and in exaggerating the importance of a few unconnected facts far beyond their real import.

The principal difficulty with appellants' case is the manner in which they seek to hold Oberer Development liable for the obligations of Gold Key Builders. They attempt to accomplish this by two avenues. First, they argue that there was substantial confusion of identity between Gold Key Builders' predecessors (Enco and Anco) and Creative Construction. Because Creative was merged into Oberer Development, they contend that Oberer Development can be held liable for the confusion. Second, they argue that there was a lack of separate identity between Gold Key's predecessors and Oberer Enterprises, and further confu-

sion between Oberer Development. In short, appellants attempt to pierce through Gold Key and its predecessors to Oberer Development by way of Oberer Enterprises.

We deal first with the Creative approach. It is significant that all three of the construction projects were completed and total payment rendered prior to 1977. *Although Creative was eventually merged into Oberer Development, until 1977 it was an independent and viable corporation.* Oberer Development did not own stock in Creative and there is no evidence Oberer Development dominated Creative in any way. True enough, Creative and Oberer Development had common shareholders and directors, and were both in the business of general contracting and design. However, these facts alone are not sufficient to justify piercing the corporate veil.

Appellants vigorously contend that there was a complete lack of substantive corporate identity between Creative and Gold Key's predecessors. However, the undisputed evidence shows that Creative did remain separate from Gold Key's predecessors. Creative was given the design contract for one of the projects, and there is some evidence to show that it may have become tangentially involved in a consulting capacity with other projects, but absolutely no evidence was introduced to show that Creative was controlled in any way by Gold Key's predecessors. No evidence was introduced to show that Creative did not keep separate financial records, hold separate board and shareholder meetings, have business with corporations other than Gold Key's predecessors, maintain separate bank accounts, list separate phone numbers, or pay its own bills. There is some evidence that an officer of a Gold Key predecessor may have acted on one occasion for Creative during the transition period from his employment with Creative to his new position, but this cannot be considered sufficient to pierce a corporate veil. There is no evidence that either Creative or Gold Key's predecessors were grossly undercapitalized, nor was there any indication that during the period the projects were in progress Creative and Gold Key's predecessors tried to avoid their obligations by hiding behind each other's corporate structures.

There was an instance where Creative received a bill from another company with regard to an entirely different project; a bill which should have been directed to a Gold Key predecessor. However, the uncontradicted testimony revealed that this error by a third party was corrected. Creative did not pay the bill, Gold Key's predecessor paid. There were a couple of other instances of third parties' mistakes in sending documents to one corporation which should properly have been directed to another. Nevertheless, it is crystal clear that Creative maintained a separate corporate identity from Gold Key's predecessors.

We cannot help but note the abundant evidence in the record that CM's officers were experienced businessmen who fully understood the nature of related corporate structures. Time after time they demonstrated their understanding of the separate identities of Creative and Gold Key's predecessors by addressing separate correspondence to each. Moreover, it is not irrelevant that whatever minimal confusion existed between Creative and Gold Key's predecessors was created by the mistakes of third parties and related to entirely different projects. That CM understood the Oberer owned companies to be somewhat related, but was fully aware of their separate corporate identities, is obvious from the evidence.

A similar analysis applies to CM's attempts to reach Oberer Development through Oberer Enterprises, the large group of Oberer owned firms. Appellants failed to introduce any evidence that any of the Oberer group of firms owned the capital stock of each other. No evidence was introduced to show that any of the corporations financed each other or caused incorporation of other corporations. Absolutely no evidence was introduced to show that any of the Oberer Corporations were grossly undercapitalized. No showing was made that the directors or executives of the corporations did not act independently in the

interest of each corporation. Finally, there was no evidence introduced to show that the formal legal requirements of the corporations were not observed or that Oberer Enterprises is an entity capable of being sued as a party.

Appellants rely heavily on a letter from George Oberer to a CM officer in which he said that a Gold Key predecessor was closely related to the other Oberer firms and that a problem with a Gold Key predecessor was considered an Oberer problem. This letter is insufficient to provide a basis for holding Oberer Development Company liable for the obligations of another corporation which was far from being a shell or sham corporation. Appellants introduced no evidence to show that Gold Key's predecessors were not observing corporate formalities, were grossly undercapitalized, did not pay their own expenses, did not act independently of the other Oberer firms, or were manipulated by other Oberer corporations.

Appellants also argue that a computer printout from an outside company shows payroll records of Oberer firms. They argue that because "Oberer Construction" was written across the top of the printout and because employees of several Oberer firms appear on the list, they have shown that there was intermingling of employees. However, an examination of the printout reveals that each Oberer firm was given a separate code number and that the employees were separated by the company codes.

We have noted that there was no evidence introduced to show that any of the Oberer firms were not viable corporations at the time the contracts on the nursing homes were signed and during the construction phases of the projects. We consider this lack of evidence important because it shows that appellants failed to meet their burden of showing that the predecessors of Gold Key Builders were shells or sham corporations. It is true that when this action was filed Gold Key Builders was insolvent. But no evidence was presented to show why Gold Key Builders became insolvent. If the assets of Gold Key were raided by Oberer Development, or if some fraud were perpetrated by an Oberer firm to make Gold Key insolvent, then an action to pierce Gold Key's veil might very well be justified. Without such evidence, there simply is no basis from which a jury could find that a wrong had been committed.

■ In sum, we recognize that one of the primary purposes of the corporate form of business is to insulate shareholders from unlimited liability, and that the power to pierce the corporate veil should be exercised reluctantly and cautiously. *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 683 (CA4 1976).

## CONCLUSION

Inasmuch as the record before us fails to contain substantial evidence of any one or more of the three requirements to pierce a corporate veil as outlined in *Steven v. Roscoe Turner Aeronautical Corp.*, 324 F.2d 157 (CA7 1963), we agree with the district judge and hold that his judgment directing a verdict and giving judgment notwithstanding the verdict must be affirmed.

IT IS SO ORDERED.

SWYGERT, Circuit Judge, dissenting.

The evidence in this case demonstrates conclusively that the corporate veil should be pierced. All of the necessary indicia for such a result exists. Gold Key Builders is a mere instrumentality of the Oberer Development Company. The Oberer enterprises, comprising the parent company and all of the constituent companies (including Gold Key Builders), are owned and controlled by the Oberer family. Third parties dealing with the separate entities had every reason to believe that they were in reality dealing with George R. Oberer and members of his family through their corporate alter egos. Hypertechnical, legalistic distinctions, engaged in by the majority, ought not be used to immunize the Oberer Development Company from a liability it legally and morally owes.

I respectfully dissent.