In re PALMER TRADING, INC.

GNB, INC., Plaintiff,

v.

Irving GORDON, Trustee, Defendant.

No. 80 C 6310.

United States District Court,
N. D. Illinois, E. D.

Sept. 30, 1981.

Ronald R. Peterson, William A. Browner, Jenner & Block, Chicago, Ill., for plaintiff.

Irving A. Gordon, Lawrence Kallen, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

FLAUM, District Judge:

This matter comes before the court on the appeal of GNB, Inc. (GNB) from an order of the Bankruptcy Court allowing the Trustee of Palmer Trading Company (Palmer Trading) to retain GNB's federal income tax refund. For the reasons stated below, that order is reversed.

The Bankrupt, Palmer Trading, initially filed its petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–74, but the matter is now a Chapter 7 liquidation, 11 U.S.C. §§ 701–66. During the course of the proceedings, the Trustee of the Bankrupt collected a tax refund check drawn on the United States Treasury in the amount of $40,073.08 payable to GNB. The Trustee believed the funds properly belonged to the Bankrupt.

GNB then filed an adversary complaint seeking a turnover of the funds. GNB claimed that it is a separate corporate entity from Palmer Trading and is entitled to the refund money. Among other defenses, the Trustee alleged that GNB is merely a shell or the alter ego of the Bankrupt and its assets are therefore subject to the Trustee's administration. A second affirmative defense alleged that because GNB had transferred its entire business operations to the Bankrupt, it should be estopped from denying that the tax refund was also transferred to Palmer Trading.[1] After trial, the Bankruptcy Court issued its findings of fact and conclusions of law, ruling in favor of the Trustee on both affirmative defenses.

Both GNB and Palmer Trading were in the business of selling commodity options, primarily ones listed on the London Commodity Exchange. The Bankruptcy Court found that new regulations of the Commodities Futures Trading Commission (CFTC) prompted GNB to close down its operations in 1976. "[A]pparently ... [GNB decided] it would take too much money, time and effort to reconstruct properly the books and records of the company to satisfy the license requirements of the CFTC." (Mem. Op. at 4).[2] Indeed, the court described the conduct of GNB's business affairs, particularly maintenance of its books, as negligent at best. The court also found that Arthur Palmer, principal shareholder of GNB, caused the incorporation of Palmer Trad-

---

1. A third and fourth affirmative defense were not pursued by the Trustee in the hearing below and the Bankruptcy Court deemed them waived.

2. Citations to the Memorandum Opinion of the Bankruptcy Court, dated August 5, 1980, will be indicated as "Mem.Op. at ——" and will refer to the pagination of the opinion itself. The opinion is found at page 28 of the record on appeal.

ing[3] to circumvent GNB's problems in obtaining a CFTC license. (Mem.Op. at 5). Thus, on October 12, 1976, GNB transferred assets, including its customer lists and open commodity positions, to Palmer Trading. (Mem.Op. at 6–7). The only independent activity in GNB's corporate life thereafter was the preparation by accountants for an Internal Revenue Service audit in early 1978[4] and the payment of salary to Arthur Palmer, the president of GNB (also sole shareholder of Palmer Trading).

The court, however, also found substantial overlapping activity between GNB and the Bankrupt which led the court to rule in the Trustee's favor, denying the turnover. Many findings were made supporting the court's conclusion that GNB and Palmer Trading "were operated as a common vehicle to do [Arthur Palmer's] business or bidding." (Mem.Op. at 6). These findings can be grouped into three general categories: 1) use of the same property, equipment and personnel; 2) inter-company activities; and 3) informal and/or substandard business conduct.

In the first category, the court found that GNB and Palmer Trading shared the same premises and substantially the same employees, used the same Telex machine, retained the same law and accounting firms, and employed the same chief executive officer, Arthur Palmer. Many instances of inter-company activity were also found. Palmer Trading employees often identified themselves as representing GNB when placing orders. GNB stationery was sometimes used for Palmer Trading orders. Additionally, funds owing to Palmer Trading were first wired to GNB's account and then transferred to Palmer Trading. Further, creditors such as the lessor and telephone company continued to bill GNB for services and goods even though Palmer Trading incurred the debts. Payments for the debts were made by either company, depending on which could most easily afford them. Finally, Palmer Trading took over from GNB the defense of actions being prosecuted before the CFTC and Illinois courts.[5]

In regard to substandard business conduct, the court found that no written contract or assignment was executed evidencing the transfer of assets from GNB to Palmer Trading. Further, some assets of GNB's subsidiaries were never transferred to Palmer Trading. Additionally, the inter-company transfers of funds that occurred were not accompanied by a note or other legally enforceable instrument. Finally, the court found that even up to the date of trial, the books of GNB were inadequate.[6]

Based on these findings of fact, the Bankruptcy Court held in favor of the Trustee on both of his affirmative defenses. In regard to equitable estoppel, the court determined that GNB engaged in conduct calculated to conceal from the public material facts relating to its solvency and manner of doing business. The court also noted that the purpose of the transfer of GNB's business was to obscure the improper business practices which, if discovered, would have caused the termination of GNB. Further, the court reasoned that the public, having no knowledge of GNB's improper activities, relied upon the conduct of both corporations which implied to all that GNB and Palmer Trading were the same operation. That reliance, the court concluded, was clearly detrimental to creditors. Therefore, the court equitably estopped GNB from excluding the tax refund asset from the transfer of business operations to Palmer Trading.

---

**3.** The corporation formed was initially called "GNB Commodity Options, Inc." and then changed to "Palmer Trading Company." To avoid confusion, the Bankrupt will be referred to only by its current name.

**4.** The court found that this preparation actually amounted to complete reconstruction of the books and ledgers, which took two to five people approximately three months to complete.

**5.** Although it is not completely clear, finding number 11 implies that Palmer Trading took over the defense of GNB. The court also noted that counsel for Palmer Trading sought a stay in those proceedings against GNB on the basis of Palmer Trading's initial Chapter XI petition.

**6.** The court recognized the attempts to reconstruct and clarify the records, but the judge discounted those efforts as after the fact.

As for the Trustee's alter ego defense, the court agreed that the separate corporate entities of GNB and Palmer Trading should be disregarded. In support of this conclusion, the court cited several federal and Illinois court decisions applying the doctrine of piercing the corporate veil. The judge principally relied on a decision of the Bankruptcy Court in Nevada, *Matter of Twin Lakes Village, Inc.*, 2 B.R. 532 (Bkrtcy., Nev.1980), which summarized much of the case law. In that case, the court used a lengthy list of factors in its consideration of piercing the corporate veil. The bankruptcy judge in this case also used the list, finding fourteen of the twenty factors present. The weight of these factors and all its findings led the court to conclude that the two entities of GNB and Palmer Trading were merely a device to permit Arthur Palmer to continue his business and that it would be inequitable for the court to acknowledge the separate corporate existence.

On appeal, GNB asserts that some of the court's findings of fact are unsupported by the evidence, but GNB primarily argues that the order must be reversed because the court applied the wrong legal standard in piercing the corporate veil. Specifically, GNB maintains that in the Seventh Circuit a three-part test must be applied before disregarding corporate existence. The three necessary elements, GNB contends, are: control by one corporation to such a degree that the other is its mere instrumentality; fraud or wrong by the dominant corporation through the other corporation (e. g., torts, violation of statute or stripping of assets); and unjust loss or injury to the claimant. GNB argues that the Bankruptcy Court completely failed to address the last two elements of the test and therefore its order must be reversed.

The Trustee, noting that the findings of fact cannot be set aside unless clearly erroneous, argues the record overwhelmingly supports the court's findings. The clearly erroneous standard of review is particularly important, the Trustee maintains, because the issue of whether to disregard corporate entities is primarily an issue of fact. Fur-

ther, the Trustee contends that the requisite factors are present in the case to disregard separate corporate entities. Specifically, the trustee urges that the record shows the corporations were not operated as separate entities, corporate formalities were ignored, and no substantial shareholder interest was proved damaged by piercing the veil. Finally, the Trustee submits that the Bankruptcy Court properly invoked its equitable powers in denying GNB's claim because GNB held itself out as being intermingled with Palmer Trading and substantial injustice would result from approving GNB's claim. Permitting GNB to acquire the tax refund is characterized as unjust because the $40,000 would be given to a non-operating company, the estate held for the benefit of creditors would be diminished, and the method of operations of GNB and Palmer Trading would be condoned.

■ This court need not determine whether all the contested findings of fact are clearly erroneous because it is found that the Bankruptcy Court has applied inappropriate legal standards. The law of this Circuit clearly requires the proof of each element of a three-part test before the doctrine of piercing the corporate veil can be imposed. *CM Corp. v. Oberer Development Co.*, 631 F.2d 536, 539 (7th Cir. 1980); *In re Bowen Transports, Inc.*, 551 F.2d 171, 179 (7th Cir. 1977); *Northern Ill. Gas Co. v. Total Energy Leasing Corp.*, 502 F.Supp. 412 (N.D.Ill.1980). As GNB argues, the test requires control, fraud or wrong, and unjust injury. The three-part inquiry applies not only to corporations in a parent-subsidiary relationship, but to affiliated corporations as well. *In re Bowen Transports, Inc.*, 551 F.2d 171, 179 (7th Cir. 1977).

From the court's discussion in *Bowen Transports*, it appears the first issue of control remains an element of the test, but it includes a determination of whether the corporations acted as separate and independent entities. Many of the twenty factors found in *Matter of Twin Lakes Village, Inc.*, 2 B.R. 532 (Bkrtcy., B.C.Nev.1980), are relevant to this inquiry and the Bankruptcy

Court concluded that evidence of the following factors existed: 1) commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses; 2) treatment by an individual of the assets of the corporation as his own; 3) failure to maintain minutes or adequate corporate records and the confusion of the records of the separate entities; 4) identification of the equitable owners thereof with the domination and control of the two entities; 5) identification of the directors and officers of the two entities in the responsible supervision and management; 6) sole ownership of all stock in a corporation by one individual or the members of a family; 7) use of the same office; 8) employment of the same employees and attorney; 9) failure to capitalize a corporation adequately; 10) total absence of corporate assets and under-capitalization; 11) use of the corporation as a mere shell, instrumentality, or conduit for a single venture or the business of an individual or another corporation; 12) disregard of the legal formalities and the failure to maintain arm's length relationships among related entities; 13) diversion of assets from a corporation by or to a stockholder or other person or entity to the detriment of creditors, or the manipulation of assets and liabilities in another; and 14) formation and use of a corporation to transfer to it the existing liability of another person or entity.

Many of these factors are also similar to the factors that Seventh Circuit decisions have used in determining the first prong of the three-part test.[7] *E. g., CM Corp. v. Oberer Development Co.*, 631 F.2d 536, 539 (7th Cir. 1980). They concern a lack of recognition of separate identities and a control of one entity by another. Thus, assuming all of the Bankruptcy Court's findings

are supported by the evidence,[8] the first element of the test is satisfied.

The second component requires fraud or wrong committed by the controlling corporation through the other. Here, since the Trustee is acting on behalf of creditors of Palmer Trading and seeking an asset of GNB, the test would require Arthur Palmer and GNB to have committed a wrong through Palmer Trading. Although the court did not specifically address this as a separate issue, the bankruptcy judge strongly disapproved the motivations for forming Palmer Trading and he concluded the two corporate entities were being manipulated by Arthur Palmer. In addition, a few of the factors the court cited, such as undercapitalization, lack of assets, and manipulation of liabilities and assets, indicate wrongful conduct.

■ However, although there is no doubt that GNB's books and business practices were quite questionable, what GNB did through Palmer Trading was reorganize the business so it could start again with orderly records that would meet new licensing requirements. Further, the record does not support a finding that Palmer Trading was undercapitalized and stripped of assets or that GNB manipulated assets and liabilities to Palmer Trading's detriment. The manipulation the court found was that of Arthur Palmer obscuring improper business conduct of GNB so the business could continue. While this may be true, that type of wrong harms creditors of GNB, which was left as an inactive entity, not the creditors of Palmer Trading, which received the ongoing business. Additionally, in his defense to this lawsuit the Trustee seeks to ignore the corporate identity of Palmer Trading to get at GNB's asset. He is not attempting to pierce the corporate veil to reach Arthur Palmer's assets. Indeed, the Bankruptcy

---

**7.** The factors in *CM Corp.* are phrased in terms of a parent corporation controlling a subsidiary while the factors in *Twin Lakes Villages* use language referring to the control of a common shareholder over two corporate entities.

**8.** GNB argues there is no evidence to support the following findings: Arthur Palmer treated

assets as his own; the records were confused; stock of the two corporations were held by the same individual or by a family; the corporations were inadequately capitalized; assets were diverted from a corporation to the detriment of Palmer Trading's creditors; and GNB liabilities were transferred to Palmer Trading.

Court explicitly stated its decision was not addressing the individual liability of Arthur Palmer. (Mem.Op. at 21). Thus, the wrongful conduct requirement is not met here.

The third element of the test is also lacking. The proponent of piercing the veil must show unjust loss or injury, such as insolvency of the controlled corporation. Obviously, Palmer Trading is insolvent. Further, the Bankruptcy Court stated that the creditors have been harmed and equity demands that the Trustee have a superior interest in the tax refund. However, the court did not find that the unjust loss or injury must have a causal connection to the control and wrong which compose the first two parts of the test. *Northern Ill. Gas Co. v. Total Energy Leasing Corp.*, 502 F.Supp. 412, 420 (N.D.Ill.1980). In this case, the cause of Palmer Trading's financial collapse has nothing to do with the control of Arthur Palmer, the prior inadequate bookkeeping at GNB, or the overlapping activities of GNB and Palmer Trading. Palmer Trading is bankrupt because an employee embezzled funds.[9] Thus, there is no connection established between corporate manipulation and the harm Palmer Trading's creditors have suffered. Therefore, the doctrine of piercing the corporate veil cannot be applied to disregard the separate identities of GNB and Palmer Trading because neither the second nor third elements of the test are satisfied.

■ The absence of a causal connection also renders the estoppel ruling inappropriate. The Bankruptcy Court relied on a traditional formulation of the doctrine of equitable estoppel found in 3 Pomeroy, *Equity Jurisprudence*, § 804 at 189 (5th ed. 1951). The doctrine includes the elements of voluntary deceptive conduct by the party being estopped, good faith reliance on that conduct by another party, and a change of position for the worse by that second party based on the reliance. *See also Packard Bell Electronics Corp. v. ETS–Hokin,* 509 F.2d 634, 637 (7th Cir. 1975); *Gasbarra v.*

*St. James Hospital,* 85 Ill.App.3d 32, 43–44, 40 Ill.Dec. 538, 549–50, 406 N.E.2d 544, 554–55 (1980). The court found that the establishment of Palmer Trading concealed improper activities of GNB and that creditors relied upon the conduct of both corporations which implied to all that GNB and Palmer Trading are one and the same. The bankruptcy judge then concluded the creditors' reliance was clearly detrimental. However, even if creditors did rely on a manifestation that GNB and Palmer Trading were the same operation, that reliance did not cause any change of position that was detrimental. The embezzlement, not the intermingling of the corporations, caused the injury to creditors. Therefore, all the components of equitable estoppel are not satisfied and GNB should not be estopped from denying that the tax refund was transferred to Palmer Trading. *See Packard Bell Electronics Corp. v. ETS–Hokin,* 509 F.2d 634, 637 n.6 (7th Cir. 1975) (absence of one element precludes estoppel); *People v. Clark,* 80 Ill.App.3d 46, 50, 35 Ill.Dec. 427, 431, 399 N.E.2d 261, 264 (1979) (loss or injury is an element of estoppel).

Nothing in this opinion should be read to condone the type of business conduct exhibited here. Yet the court must "recognize that one of the primary purposes of the corporate form of business is to insulate shareholders from unlimited liability, and that the power to pierce the corporate veil should be exercised reluctantly and cautiously." *CM Corp. v. Oberer Development Co.,* 631 F.2d 536, 541 (7th Cir. 1980).

Accordingly, the Bankruptcy Court's order permitting the tax refund to be retained by the Trustee is reversed.

■

---

9. This fact is not found in the Bankruptcy Court's Memorandum Opinion, but GNB has asserted it in its brief without denial or question by the Trustee.