UNITED NATIONAL RECORDS, INC.,
et al., Plaintiffs,

v.

MCA, INC., et al., Defendants.

No. 82 C 7589.

United States District Court,
N.D. Illinois, E.D.

Nov. 9, 1984.

See also, 101 F.R.D. 323.

ORDER

BUA, District Judge.

Before the Court are certain defendants' motions for partial summary judgment and defendant United Artists Corporation's motion for summary judgment. For the reasons stated below, certain defendants' motions for partial summary judgment are denied, and United Artists' motion for summary judgment is entered and continued pursuant to Fed.R.Civ.P. 56(f) pending completion of discovery.

I. *Certain Defendants' Motions for Partial Summary Judgment*

All defendants except United Artists Corporation move for partial summary judgment on plaintiffs' claims arising before December 13, 1978. Defendants argue that the applicable four-year statute of limitations, 15 U.S.C. § 15b, bars any pre-December 13, 1978 claims. Plaintiffs argue that the limitations period should be tolled due to defendants' fraudulent concealment of the cause of action and plaintiffs' failure to discover defendants' alleged wrongdoing despite the exercise of due diligence.

In this circuit, at least two types of fraudulent behavior toll a statutory limitations period. First, the "equitable tolling doctrine" will toll the limitations period if the defendant's wrongdoing is undiscovered and the plaintiff has diligently inquired into its circumstances. *Tomera v. Galt*, 511 F.2d 504, 510 (7th Cir.1975). Although the plaintiff need not allege specific acts of concealment on the part of the defendant, the plaintiff must establish due diligence in order to toll the limitations period under the equitable tolling doctrine. The second type of fraudulent behavior which tolls the limitations period is generally referred to as the "fraudulent concealment doctrine." *See generally The Seventh Circuit's Reformation of the Equitable Tolling Doctrine*, 1982 U.Ill.L.Rev. 565, 568 (1982). Under this doctrine, the plaintiff must allege that the defendant has taken "positive steps after commission of the fraud to keep it concealed." *Id.* Al-

**36**

though the plaintiff need not establish due diligence, the plaintiff must specifically allege fraudulent action "subsequent to the initial wrong." *Gieringer v. Silverman,* 731 F.2d 1272, 1278 (7th Cir.1984). In this case, plaintiffs have raised triable issues of fact under either doctrine.

### A. *The Fraudulent Concealment Allegations*

Plaintiffs allege that defendants, beginning at least as early as January 1, 1971, conspired and agreed to fix prices and impose industrywide conditions upon members of the class in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs further allege that defendants affirmatively and fraudulently concealed their wrongdoing and that class members were without knowledge of the cause of action despite the exercise of due diligence.

 Under the fraudulent concealment doctrine, the statute of limitations is tolled until actual discovery of the underlying wrong when the concealment is accomplished by affirmative acts designed to prevent discovery of the facts comprising the cause of action. *Tomera v. Galt,* 511 F.2d 504, 510 (7th Cir.1975). The affirmative acts of concealment must occur after the original wrongdoing. *Id.* Generally, the mere denial of any wrongdoing on the part of a defendant is insufficient to constitute affirmative acts of concealment under this doctrine. *E.g., Rutledge v. Boston Woven Hose & Rubber Co.,* 576 F.2d 248, 250 (9th Cir.1978). "Hiding" the wrongdoing, "throwing up a smokescreen" or "misrepresentation" concerning the facts constituting the wrong, on the other hand, are sufficient allegations to toll the limitations period. *Trecker v. Scag,* 679 F.2d 703, 708 (7th Cir.1982).

 Plaintiffs point to several press releases and other statements issued by defendants to the media as affirmative acts of concealment during the 1970s. Plaintiffs argue that these statements were designed to conceal the original wrong, defendants' conspiracy to fix prices and imposed industrywide conditions. While

many of defendants' statements are merely denial of price fixing allegations, several statements go beyond the mere denial of wrongdoing. In fact, several statements offer alternative explanations for the apparent parallel prices of records and tapes during the 1970s. For example, in 1977 an official of defendant Warner Brothers allegedly denied allegations of price fixing and further explained that recent parallel price increases were "merely a case of other companies following the lead of their competitors." Defendants' Exhibit B–97. Also in 1977, an official of defendant Capital allegedly explained that the recent price increases were due to the "pressures of inflation and shrinking margins." Defendants' Exhibit B–108. CBS allegedly explained that its price increases were due to "increased costs in many areas, including recording, raw materials, manufacturing, promotion, sales and distribution." Defendants' Exhibit B–19. Defendants RCA and Columbia allegedly offered similar explanations for their price increases. Defendants' Exhibits B–28, B–79. In 1978, defendant Capital allegedly stated that its pricing structure "is always determined in the context of competitive considerations." Defendants' Exhibit B–172. All of these statements, allegedly attributable to defendants, go beyond mere denial of wrongdoing. Each statement offers an alternative reason for the apparent parallel price increases throughout the 1970s. These statements, among others contained in Defendants' Exhibit B, create triable issues of fact as to whether defendants affirmatively concealed their alleged agreement to fix prices and impose industrywide conditions during the 1970s.

 In addition to the various statements allegedly attributable to defendants in Defendants' Exhibit B, plaintiffs point to allegedly secret meetings between defendants and confidential memoranda issued by defendants urging secrecy as further evidence of defendants' fraudulent concealment. For example, plaintiffs allege that representatives of CBS and Warner (Atlantic) met secretly on March 25, 1974, for the

purpose of concealing an alleged pricing agreement. See Exhibit C to plaintiffs' Surreply. In addition, plaintiffs point to two "confidential" memoranda and one "confidential" letter allegedly discussing defendants' future pricing plans. See Exhibits D, E and F to plaintiffs' Surreply. Such conduct generally is sufficient to create a question of fact regarding a fraudulent concealment claim. *See generally* R. Marcus, *Fraudulent Concealment in Federal Court: Toward a More Disparate Standard,* 71 Geo.L.Rev. 829, 859 (1983), and cases cited therein.

### B. *The Due Diligence Allegations*

■ Under the equitable tolling doctrine, when the wrongdoing "has been concealed or is of such a nature as to conceal itself, the statute of limitations is tolled until the plaintiff has obtained knowledge of the fraud *or in the exercise of due care should have obtained knowledge of the fraud.*" *Sperry v. Barggren,* 523 F.2d 708, 710 (7th Cir.1975) (citations omitted) (emphasis supplied). Although the plaintiff need not allege affirmative acts of concealment under this doctrine, the plaintiff must establish due diligence in inquiring into the circumstances surrounding the alleged wrongdoing. *Tomera v. Galt,* 511 F.2d 504, 510 (7th Cir.1975). Conspiracies to violate the antitrust laws are generally self-concealing. *See, e.g., Greenshaw v. Lubbock County Beverage Assoc.,* 721 F.2d 1019, 1030 (5th Cir.1983).

■ Defendants argue that plaintiffs knew, or should have known, of their antitrust claims no later than 1978. Defendants point to several articles printed in trade publications which reported defendants' announced price changes. See Defendants' Exhibit B. Defendants, however, misconstrue the nature of the alleged wrongdoing. Defendants' price increases, and even their apparent parallel price increases, do not constitute violations of the antitrust laws. *See, e.g., Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.,* 346 U.S. 537, 74 S.Ct. 257, 98 L.Ed. 273 (1954); *Quality Auto Body, Inc.*

*v. Allstate Ins. Co.,* 660 F.2d 1195 (7th Cir.1981). Mere knowledge that defendants were raising prices throughout the 1970s does not mean the plaintiffs knew or should have known that defendants were allegedly agreeing to fix prices. *King & King Enterprises v. Champlin Petroleum Co.,* 657 F.2d 1147, 1156 (10th Cir.1981).

■ Defendants also argue that the existence of prior antitrust litigation against defendants should have put all plaintiffs on notice of the existence of a horizontal price fixing conspiracy. Defendants point specifically to a suit brought in 1976 by Dean Stamatopoulos, owner of plaintiff GHII, Inc. Although the Stamatopoulos litigation included allegations of price fixing, Stamatopoulos' knowledge, in 1976, of the facts giving rise to his suit appear to be nothing more than assumptions based upon his observation of the parallel price structure of the industry. Stamatopoulos testified regarding the facts he knew in support of his 1976 lawsuit as follows:

> After 21 years in the record business, I assumed something was going on fishy when everything was escalating at the same time. There was a definite pattern. Price raises, introduction of new midline products; it was too coincidental.

Stamatopoulos Dep. p. 201, reprinted at Defendants' Exhibit F–77.

Class members cannot be charged with knowledge of a potential claim "unless they are aware of *some evidence* tending to support it." *In re Beef Industry Antitrust Litigation,* 600 F.2d 1148, 1171 (5th Cir.1979) (emphasis supplied). The mere filing of a lawsuit "is not *as a matter of law* tantamount to actual or constructive known of their claim." *Id.* (emphasis in original). Defendants have failed to establish that class members should be charged with knowledge of the alleged price fixing conspiracy merely because Stamatopoulos filed a similar lawsuit in 1976.

Defendants next argue that a federal grand jury investigation regarding possible antitrust violations within the record industry during the 1970s should have put plaintiffs on notice of their claims. Defendants

point to several newspaper and trade publication articles reporting on the grand jury investigation. See Defendants' Exhibit D. Several plaintiffs admit that they were aware of the grand jury investigation as early as 1977.

Defendants rely primarily on *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir.1975) in support of their argument that the grand jury investigation should have put plaintiffs on notice of their antitrust claims in 1976. In *Dayco Corp.*, the court held that widespread publicity regarding the defendants' alleged illegal conduct should have put the plaintiffs on notice of their claims. Furthermore, the court held that the defendants' denials of wrongdoing could not be considered affirmative acts of concealment. Accordingly, the court affirmed the district court's grant of defendants' motion for summary judgment on the statute of limitations.

*Dayco Corp.*, however, is distinguishable from this case. In *Dayco Corp.*, a public Congressional investigation was conducted regarding the defendants' alleged wrongdoing. In addition, the Federal Trade Commission brought suit further exposing the defendants' conduct. In this case, a federal grand jury conducted a secret investigation into defendants' practices for about two years. Unlike *Dayco Corp.*, the information presented to the grand jury was not available to plaintiffs. See Fed.R.Crim.P. 6(e). In addition, *Dayco Corp.* is not persuasive in light of the Sixth Circuit's articulation of the elements of the fraudulent concealment doctrine. Unlike the Seventh Circuit, the Sixth Circuit apparently does not recognize the fraudulent concealment and equitable tolling doctrines as *alternative* means for a plaintiff to toll the limitations period. Instead, the Sixth Circuit requires a plaintiff to establish *both* affirmative concealment *and* due diligence before prevailing on a fraudulent concealment claim. See *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975). The Seventh Circuit requires that a plaintiff establish affirmative concealment *or* due diligence. *Tomera v. Galt*, 511 F.2d 504, 510 (7th Cir.1975).

■ In this case, even assuming plaintiffs could be charged with knowledge of the grand jury's investigation, defendants' emphatic denials of wrongdoing and alternative explanations for the apparent parallel price increases (See Defendants' Exhibit B) may have caused plaintiffs to abstain from further investigation of their claims at that time. Although defendants' "mere denials" do not constitute affirmative acts of concealment under the fraudulent concealment doctrine (see discussion *supra* at 36–37), defendants' "mere denials" and alternative explanations may have reasonably caused plaintiffs to end their investigation into the true cause of the apparent parallel price structure of the record industry. See *Mt. Hood Stages, Inc. v. Greyhound Corp.*, 555 F.2d 687, 698 (9th Cir. 1977). In any event, in light of defendants' denials and alternative explanations, plaintiffs have raised a question of fact as to whether they should have disregarded defendants' statements and inquired further into possible antitrust violations. See *Sperry v. Barggren*, 523 F.2d 708, 711 (7th Cir.1975) (admissions of plaintiffs' knowledge concerning defendants' conduct prior to limitations period admissible against plaintiffs at trial but not conclusive on motion for summary judgment).

■ The remaining argument advanced by defendants in support of their motion is without merit. Defendants argue that plaintiffs' allegations of fraudulent concealment should be stricken from the complaint for failure to allege the particularity required by Fed.R.Civ.P. 9(b). At a minimum, defendants request that the fraudulent concealment allegations be stricken without prejudice.

The specificity requirements of Fed.R. Civ.P. 9(b) have been imposed to ensure that a defendant is apprised of the fraud claimed in a manner sufficient to permit the framing of an adequate responsive pleading. *Baselski v. Paine, Webber, Jackson & Curtis, Inc.*, 514 F.Supp. 535, 540 (N.D.Ill.1981). A party who fails to raise a Rule 9(b) objection normally waives

the requirement. 2A J. Moore, *Moore's Federal Practice* ¶ 9.03 (2d ed. 1984), at 9-35, and cases cited therein. The time limits applicable to Rule 12(b) motions may be applied by analogy to objections to the sufficiency of a pleading under Rule 9(b). *Stonehill v. Security National Bank,* 68 F.R.D. 24, 44 n. 38 (S.D.N.Y.1975).

The most analogous time limitation under Rule 12(b) is Rule 12(h)(1) regarding defenses under Rule 12(b)(1) through (5). Rule 12(h)(1) defenses are waived if not made as a motion under Rule 12. Furthermore, since defendants' request that the fraudulent allegations be stricken from plaintiffs' complaint, defendants' request is also analogous to a Rule 12(f) motion to strike. A Rule 12(f) motion must be made within 20 days after service of the complaint. Defendants, however, chose to answer plaintiffs' complaint and, therefore, cannot now complain that the complaint fails to plead fraud with sufficient particularity. The factual record before the Court contains specific evidence of defendants' alleged fraudulent concealment. Defendants have had a sufficient opportunity to respond to plaintiffs' charges as contemplated by Rule 9(b). Accordingly, defendants' contentions regarding plaintiffs' failure to comply with Rule 9(b) have been waived.[1]

## II. *Defendant United Artists Corporation's Motion for Summary Judgment*

Defendant United Artists Corporation ("United Artists") moves for summary judgment on the grounds that it has been improperly named as a defendant in this case. United Artists claims that it has never been a producer of records or tapes. Although United Artists admits that before May 5, 1978, it owned the outstanding shares of stock in a subsidiary record company, United Artists argues that: (1) it is not liable for the conduct of its former record company subsidiary; and (2) if any liability is found, plaintiffs' claims are barred by the four-year limitations period.

Plaintiffs argue that: (1) questions of fact exist as to whether United Artists is liable for the conduct of its subsidiary record company; and (2) questions of fact exist as to whether the limitations period should be tolled due to defendants' fraudulent concealment of the cause of action. Alternatively, plaintiffs argue that defendants' motion is premature pending the completion of discovery. Accordingly, plaintiffs have filed an affidavit under Fed.R.Civ.P. 56(f) requesting the Court to enter and continue defendant's motion.

United Artists is principally engaged in the business of distributing motion pictures and is not engaged in the phonograph record industry. Before May 5, 1978, United Artists owned the outstanding stock of United Artists Music and Records Group, Inc. ("UAM"), a California corporation engaged in the record business. On May 5, 1978, United Artists sold its UAM stock to the M & R Music Corporation.

■■■■ In order for United Artists to be held liable for conduct attributable to its subsidiary, UAM, three elements must be proved:

(1) control by United Artists to such a degree that UAM has become its mere instrumentality;

(2) fraud or wrong by United Artists through its subsidiary, UAM; and

(3) unjust loss or injury to the claimant, such as insolvency of UAM.

*Steven v. Roscoe Turner Aeronautical Corporation,* 324 F.2d 157, 160 (7th Cir. 1963). As to the first element, control, courts have considered a number of factors, including whether:

(a) the parent corporation owns all or most of the capital stock of the subsidiary;

(b) the parent and subsidiary corporations have common directors or officers;

(c) the parent corporation finances the subsidiary;

---

**1.** Since the Court has denied defendants' motions for partial summary judgment, plaintiffs' argument that the motions are premature under Fed.R.Civ.P. 56(f) is moot.

**40**

(d) the parent corporation subscribed to all the capital stock of the subsidiary or otherwise causes its incorporation;

(e) the subsidiary has a grossly inadequate capital;

(f) the parent corporation pays the salaries and other expenses or losses of the subsidiary;

(g) the subsidiary has no assets except those conveyed to it by the parent corporation;

(h) the parent corporation uses the property of the subsidiary as its own;

(i) the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; and

(j) the formal legal requirements of the subsidiary are not observed.

*Steven, supra,* 324 F.2d at 161. *See also Allegheny Airlines, Inc. v. United States,* 504 F.2d 104, 112–113 (7th Cir.1974). While stock control and common directors and officers are generally prerequisites for finding an instrumentality, they are not sufficient by themselves to bring the rule into operation. *Steven, supra,* 324 F.2d at 161.

■ Plaintiffs' exhibits indicate that two officers of UAM, L.G. Bos and Michael Stewart, also served as officers of United Artists between 1975 and 1977. Plaintiffs' exhibits further indicate that United Artists guaranteed several million dollars in loans made by various banks to UAM. United Artists admits that prior to May 5, 1978, it owned the outstanding stock of UAM. Plaintiffs, therefore, at best, have created questions of fact on only three factors listed in *Steven.* (Factors (a), (b) and (c)). Even assuming the truth of these allegations, however, there would be insuf-

ficient evidence to create a triable issue on whether UAM is a mere instrumentality of United Artists.

■ The Court, however, will enter and continue United Artists' motion for summary judgment pursuant to Fed.R.Civ.P. 56(f). Plaintiffs should be given an opportunity to continue discovery on the issue of whether UAM was a mere instrumentality of United Artists as outlined in *Steven.* Accordingly, plaintiffs are ordered to file additional materials opposing United Artists' motion no later than one week after the discovery cutoff date, February 11, 1985. United Artists may respond by February 18, 1985. If plaintiffs fail to file additional supporting materials, United Artists' motion for summary judgment will be granted.[2]

## CONCLUSION

Certain defendants' motions for partial summary judgment are denied. Defendant United Artists Corporation's motion for summary judgment is entered and continued pursuant to Fed.R.Civ.P. 56(f) pending completion of discovery. Plaintiffs are to file additional materials in opposition to defendant United Artists' motion no later than February 11, 1985, one week after the discovery cutoff date. Defendant United Artists to reply by February 18, 1985.

IT IS SO ORDERED.

---

**2.** If plaintiffs convince the Court that factual questions exist regarding the three *Stevens* elements (control, wrongdoing and unjust loss), United Artists' motion will be denied. The Court has already decided that factual questions exist on the issue of whether plaintiffs may toll the limitations period under the equitable estoppel doctrine. See discussion *supra* at 36–39. Plaintiffs, however, may present evidence

of affirmative acts of concealment on the part of United Artists in their February 11, 1985 materials if plaintiffs desire to utilize the fraudulent concealment doctrine against United Artists at trial. See discussion *supra* at 36–37. Plaintiffs are entitled to conduct "merits discovery," as well as discovery regarding the *Stevens* elements, pending determination of United Artists' motion for summary judgment.