UNITED STATES of America ex. rel. Dr. Man Tai LAM, Dr. William Meshel, Plaintiffs,

v.

TENET HEALTHCARE CORP., Defendant.

No. EP–02–CA–525–KC.

United States District Court, W.D. Texas, El Paso Division.

March 28, 2007.

Mitchell L. Weidenbach, Assistant United States Attorney, San Antonio, TX, Antonio V. Silva, Law Offices of Antonio V. Silva, El Paso, TX, Mark Nagle, Phillip Michael, Troutman and Sanders, LLP, Washington, DC, for Plaintiffs.

Joseph L. Hood, Jr., Scott, Hulse, Marshall, Feuille, Finger & Thurmond, P.C., El Paso, TX, Katherine Lauer, Latham & Watkins, San Diego, CA, for Defendant.

### ORDER

CARDONE, District Judge.

On this day, this Court considered the United States of America's "Motion to Partially Intervene for the Purpose of Dismissing the Relators' Outlier Allegations and Memorandum in Support" ("Motion to Intervene") and "Motion to Dismiss Relators' Outlier Allegations" ("Government's Motion to Dismiss"), in addition to Defendant Tenet Healthcare Corporation's "Motion to Dismiss Relators' Fourth Amended Complaint" ("Tenet's Motion to Dismiss"). For the reasons set forth herein, the Government's Motion to Intervene is **GRANTED,** the Government's Motion to Dismiss is **DENIED,** and Tenet's Motion to Dismiss is **DENIED** in part and **GRANTED** in part.

## I. BACKGROUND

The instant case is a *qui tam* action brought by Doctors William Meshel ("Dr.Meshel") and Man Tai Lam ("Dr. Lam") (collectively "Relators"), on behalf of the United States of America ("Government"), against Defendant Tenet Healthcare Corporation ("Tenet") for alleged violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA").

Doctors Meshel and Lam are both licensed physicians who have practiced medicine in El Paso, Texas since 1998 and 1979, respectively. Fourth Am. Compl. ¶¶ 4–5, 8–9 ("FAC"). Throughout their careers, Drs. Meshel and Lam have either maintained privileges and/or held appointments at numerous El Paso area hospitals, including Providence Memorial Hospital ("Providence"), Sierra Medical Center ("Sierra"), and Del Sol Medical Center ("Del Sol"). *Id.* ¶¶ 8–10. In fact, Dr. Lam served on the Medical Executive Committee of Providence, which is the highest governing body for the medical staff there.[1] *Id.* ¶ 10.

Tenet operates and maintains both Providence and Sierra. *Id.* ¶ 7.

---

1. Currently, he holds an ownership interest in, and is a managing partner, Chairman of the Board, and Chief of Staff at, Southwestern General Hospital ("Southwestern"), a competitor of Tenet. FAC ¶ 9.

Relators allege that, through personal observation and inquiry, they learned that Tenet paid substantial sums to individual physicians to cover the cost of rent, office staff, telephones, and similar business expenses. *Id.* ¶ 11. They further allege that they learned that Tenet paid physicians for services rendered as "medical directors," when these physicians did not, in fact, render services in exchange for payment. *Id.*

In addition to these allegations related to Tenet's alleged kickback scheme, Relators allege that, by virtue of Dr. Lam's management positions at Providence and Sierra, Dr. Lam knew that Providence and Sierra were earning substantially higher profits than Southwestern. Third Am. Compl. ¶ 11 ("TAC"). They allege that Dr. Lam knew that Tenet hospitals listed much higher charges on their charge master (the hospital's published list of fees for various services) than Southwestern, even though the Government generally reimburses a fixed amount for Diagnosis Related Groups ("DRGs"), irrespective of the figure stated on the charge master. *Id.* Though Dr. Lam had been briefed on the outlier component of the Medicare reimbursement system, he did not immediately recognize how increases in charge master prices affected reimbursement for outliers. *Id.* ¶ 12.

In January 2002, Relators allegedly met in the Del Sol Hospital physician's lounge to exchange information regarding Tenet's practices with respect to medical directorships and high DRG charges. FAC ¶ 12. Both noted the substantially higher profits earned by Tenet facilities in comparison with Southwestern facilities. *Id.* At this meeting, Dr. Lam allegedly informed Dr. Meshel that he had discovered that Tenet was using the appointment of medical di-

rectorships and other payments as a method by which to induce patient referrals. *Id.* ¶ 13.

After this meeting, Dr. Meshel allegedly proceeded with his own inquiry and reported information to FBI Agent Steve Sylvester on February 17, 2002. *Id.* ¶ 14. Specifically, Dr. Meshel alleges that on or around February 17, 2002, he provided Agent Sylvester with information regarding how much money the directors of particular services should make, and with information that three oncologists and an infectious disease specialist were receiving kickbacks from Tenet. *Id.* On February 18, 2002, Dr. Meshel further relayed to Agent Sylvester that Dr. Lam had discovered that four physicians in the Texas Oncology P.A. practice group were receiving kickbacks from Tenet, and that such payments were being identified as expenses on the hospital's cost reports. *Id.* ¶ 15. Relators also allege that they provided Agent Sylvester with information related to the high DRG charges around this time. TAC ¶ 15.

Thereafter, on April 16, 2002, Relators allege that Dr. Meshel met with Agents Sylvester, FNU [2] Skillington, and/or FNU Murray to relay the information that he and Dr. Lam had uncovered. FAC ¶ 16. Agent Murray allegedly responded that the case might be difficult to prove because the physicians could claim that they had spent time at home working on matters related to their medical directorships. *Id.* On this same date, Dr. Meshel also sent Agent Sylvester an email summarizing what he had reported in their meeting. *Id.* For example, he wrote that Providence and Sierra had been paying five specific physicians in the oncology group between $60,000 and $120,000 per year, an amount much higher than the estimated legitimate pay for a medical director, to induce patient referrals. *Id.* ¶ 17. Dr. Meshel also

2.  First name unknown.

informed Agent Sylvester that these five oncologists were referring a large number of patients to Tenet facilities at remote locations, notwithstanding the fact that Del Sol was across the street and had facilities capable of treating all such patients. *Id.* ¶ 18. In their Fourth Amended Complaint, Relators describe in detail several suspicious referrals. *Id.* ¶¶ 19–26.

Dr. Meshel alleges that he continued his investigation and reported his findings to Agent Sylvester on an ongoing basis. *Id.* ¶ 27–28.

On November 18, 2002, Drs. Lam and Meshel filed a *qui tam* action on behalf of the United States, alleging two causes of action. First, Relators allege that "Tenet improperly manipulated the [o]utlier system by artificially inflating its charges when its real costs remained constant or even declined," thereby improperly manipulating payments from the Medicare/Medicaid system. TAC ¶ 31. Second, Relators allege that Tenet developed a "kickback scheme," whereby it offered remuneration in the form of medical directorships at Tenet and reimbursement of office expenses to physicians who referred patients to Tenet hospitals. FAC ¶ 29. In July 2005, the Government formally indicated its intent not to intervene in the suit. Thereafter, Relators pursued this case on their own.

On June 29, 2006, the United States finalized a global settlement with Tenet, resolving allegations that Tenet had improperly received outlier payments from Medicare and other federal health care programs, among other things. Tenet's Req. for Judicial Notice, Ex. 1.

On August 15, 2006, this Court issued an order granting in part and denying in part Tenet's motion to dismiss. Specifically, this Court found that a question of fact exists as to whether Relators are the original sources of the information related to the outlier fraud, which would entitle them to a portion of the settlement agreement. The Court further found that although Relators' anti-kickback claim failed to satisfy the requirements of Federal Rule of Civil Procedure 9(b), Relators would be given an opportunity to amend their complaint to comply with Rule 9(b).

On September 14, 2006, Relators filed their Fourth Amended Complaint, which is the subject of the motions to dismiss under consideration.

## II. DISCUSSION

### A. Standard

The False Claims Act, 31 U.S.C. § 3729 *et seq.*, ("FCA") permits private parties to bring certain suits on behalf of the United States against anyone submitting a false claim to the government. *Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir.2004). Federal Rule of Civil Procedure 9(b) requires that parties who bring claims under the FCA plead their claims with particularity. FED.R.CIV.P. 9(b); *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 328 (5th Cir.2003) (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1998)). At a minimum, Rule 9(b) "requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud.'" *Dow Chem. Co.*, 343 F.3d at 328. As such, motions to dismiss brought under Rule 9(b) are treated as motions to dismiss brought under Rule 12(b)(6). *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted. FED.R.CIV.P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true, and view them in a light most favorable to the plaintiff. *Id.; Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir.2002). A court will dismiss a complaint pursuant to Rule 12(b)(6) only if it appears beyond a

doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *S. Christian Leadership Conference v. Sup.Ct. of La.*, 252 F.3d 781, 786 (5th Cir.2001).

## B. Motion to Intervene

■ The Government argues that although it initially declined to intervene in this case, it should nonetheless be allowed to intervene at this point because it has an interest in whether Relators are entitled to object to or obtain a share of the global Tenet settlement agreement. Gov't's Mot. to Intervene 5.

Relators first respond by arguing that the Government has not shown good cause for intervention, because it has not shown the existence of new evidence and/or claims. Relators' Opp'n to the United States' Mot. to Partially Intervene 3. Rather, Relators argue the Government seeks intervention solely to prevent them from obtaining a share of the settlement proceeds. *Id.* at 4. Relators further argue that the Government has not met the standards set forth in Federal Rule of Civil Procedure 24, which would allow intervention at this late date. *Id.* at 6–9.

Federal Rule of Civil Procedure 24 provides that a party may intervene, by right, upon timely application when (1) a statute of the United States confers an unconditional right to intervene or (2) the applicant claims an interest relating to the transaction that is the subject of the action, and the applicant is situated such that the disposition of the action may impair the applicant's ability to protect that interest, unless the applicant's interest is already adequately represented by existing parties. FED.R.CIV.P. 24(a). Rule 24 further provides that a party may intervene, by permission, upon timely application when (1) a statute of the United States confers a conditional right to intervene or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. FED.R.CIV.P. 24(b).

The FCA provides that even after the government declines to intervene in a *qui tam* action, the court may still permit the government to intervene at a later date "upon a showing of good cause." 31 U.S.C. § 3730(c)(3). Though there is little case law defining "good cause," several courts have found that good cause exists when new and significant evidence is produced during discovery. *See, e.g., United States ex rel. Tyson v. Amerigroup Corp., Inc.,* 2005 WL 2667207, *3, 2005 U.S. Dist. LEXIS 24032, at *10 (N.D.Ill. Oct. 17, 2005); *United States ex rel. Hall v. Shwartzman,* 1995 U.S. Dist. LEXIS 7850, at *5–6 (E.D.N.Y. Jan. 17, 1995); *United States ex rel. Walle v. Martin Marietta Corp.,* 1994 WL 518307, *2, 1994 U.S. Dist. LEXIS 13865, at *5 (E.D.La. Sept. 21, 1994). Indeed, the legislative history behind § 3730 indicates that the purpose of late intervention is to allow the government to intervene if new evidence, discovered after the first sixty (60) days of litigation, escalates the magnitude or complexity of the fraud, causing the government to reevaluate its initial assessment of the case. *Ridenour v. Kaiser–Hill Co.,* 397 F.3d 925, 933 (10th Cir.2005) (citing S.REP. No. 99–345, at 26–27 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5291–92). As interpreted by the Tenth Circuit, the purpose of § 3730(c)(3) is "to pursue litigation, not dismiss it." *Id.* Nonetheless, even if the court allows a late intervention, the intervention must not limit the status and rights of the relators. 31 U.S.C. § 3730(c)(3).

In the instant case, the Government has not shown good cause in the form of newly discovered evidence and/or claims because discovery has not yet been completed in this case.[3] However, this Court finds that

---

**3.** The Government implies that discovery has

not been completed with its statement that

the Government has an interest in whether the Relators are entitled to object to or obtain a share of the global Tenet settlement agreement, because any recovery on the part of the Relators will come out of the Government's pocket. Moreover, the prejudice which would result to the Government if it is not permitted to intervene far outweighs the prejudice to the Relators if the Government is permitted to intervene. Finally, the status and rights of the Relators will not be limited by this intervention because the Relators still have the possibility of obtaining recovery in the form of a percentage of the settlement agreement. Accordingly, this Court will grant the Government's Motion to Intervene.

### B. Request for Judicial Notice

Tenet requests that this Court take judicial notice of Exhibit 1, filed concurrently with its Motion to Dismiss Relators' Fourth Amended Complaint. Def. Tenet Healthcare Corp.'s Req. for Judicial Notice in Support of its Mot. to Dismiss 1 ("Req."). Specifically, Tenet requests this Court to take judicial notice of the "Stipulated Notice of Dismissal and Order" filed in *United States v. Tenet Healthcare Corp., et al.,* nos. CV–03–206–GAF (JTLx), CV–04–857–GAF (JTLx), and CV–04–859–GAF (JTLx), in the United States District Court for the Central District of California, Western Division.

Relators have filed no response to Tenet's request.

■ Federal Rule of Evidence 201(b) allows this Court to take judicial notice of facts that are not subject to reasonable dispute in that they are either (1) generally known within the territorial jurisdiction or (2) capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned. FED.R.EVID. 201(b); *Taylor v. Charter Med. Corp.,* 162 F.3d 827, 831 (5th Cir.1998). Indeed, Rule 201(d) goes so far as to require that a court take judicial notice "if requested by a party and supplied with the necessary information." FED.R.EVID. 201(d). Within the Fifth Circuit, courts may take judicial notice of documents filed in other courts for the purpose of establishing the fact of litigation and related filings. *Taylor,* 162 F.3d at 830 (court filings); *see also Harris v. Dretke,* 2006 U.S. Dist. LEXIS 32252, at *2 n. 2 (N.D.Tex. Apr. 25, 2006) (taking judicial notice of court documents and records filed in prior federal habeas corpus proceedings).

The Stipulated Notice of Dismissal and Order was signed by the parties, filed in federal district court, and eventually signed by the federal district judge presiding over the case. Therefore, this Court finds that the existence of the document and its contents are "capable of accurate determination by resort to sources whose accuracy cannot reasonably be ques-

"[t]he United States is prepared to conduct that discovery, if necessary, to demonstrate that relators do not, in fact, escape the public disclosure bar." Gov't's Mot. to Intervene 5. Relators also indicate that discovery has not been completed with their statement that the Court should provide Relators with "remedial action [which] includes an opportunity for Relators to take discovery." Relators' Opp'n to the United States' Mot. to Dismiss 14. This is so even though the discovery deadline in this case is March 30, 2007—a deadline requested by the parties on July 21, 2006 and of

which even the Government was well aware, especially in light of its continued involvement in this case before formal intervention. As this Court has already extended the discovery deadline in this case, and as this case has been pending for far too long, this Court will grant no more extensions. The Court tires of the continual delays in this case. If the discovery deadline passes without discovery having been completed, then the fault lies with no one but the parties themselves for failing to obey this Court's orders or seek timely relief from those orders.

tioned." Accordingly, this Court grants the request and takes judicial notice of Exhibit 1.

### C. Rule 9(b): Pleading With Particularity

Both the Government and Tenet have filed motions to dismiss Relators' Fourth Amended Complaint pursuant to Rule 9(b). The Government argues that Relators have failed to plead the outlier claim with requisite specificity. Tenet argues that Relators have failed to plead the anti-kickback claim with requisite specificity. Each of these arguments will be addressed in turn.

#### 1. Outlier claim

In its Motion to Dismiss, the Government argues that Relators' outlier claim should be dismissed for failure to meet the pleading standard set forth in Federal Rule of Civil Procedure 9(b). United States' Mot. to Dismiss Relators' Outlier Allegations 1 ("Gov't's Mot."). The Government argues that it "cannot meaningfully fulfill its statutory obligation to investigate a relator's allegations, and to decide whether to intervene and take over those allegations, unless the relator provides sufficient information about the alleged fraud." *Id.* at 9. It argues that the Relators "do nothing more than articulate a suspicion of wrongdoing on the Defendant's part," failing to provide specific information about Tenet's costs or charges adjusted to cost, or information about the "who, what, when, where and how" of the alleged fraud. *Id.* at 11–15.

Relators first respond by arguing that the Government's motion is untimely as it is made more than a year after the Gov-ernment decided not to intervene in this case. Relators' Opp'n to the United States' Mot. to Dismiss 1–4 ("Relators' Resp. to Gov't"). Relators next discuss the law of the case doctrine, which discourages courts from reopening what has already been decided, and argue that the doctrine applies here where the Court has already determined that the Relators' outlier claim survived a motion to dismiss. *Id.* at 4–8. Relators also argue that the Government has waived its Rule 9(b) objection, as it waited until four (4) years after the filing of the original complaint, more than one (1) year after its decision not to intervene, and two (2) months after filing the fourth amended complaint[4], to challenge the Relators' pleading. *Id.* at 8–14. Finally, Relators argue that they have sufficiently alleged the "who, what, when, where and how" of the alleged fraud with requisite specificity. *Id.* at 10–14.

Rule 9(b) is meant to: (1) provide defendants with fair notice of a plaintiff's claims; (2) protect defendants from harm to their reputation; and (3) reduce the number of nuisance claims. *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D.Md.2000) (citing *Gollomp v. MNC Financial, Inc.*, 756 F.Supp. 228, 232 (D.Md. 1991)); *see also Jacobson v. Cohen*, 146 F.R.D. 95, 97 (S.D.N.Y.1993) (" '[T]he specificity requirements of Fed.R.Civ.P. 9(b) have been imposed to ensure that a defendant is apprised of the fraud claimed in a manner sufficient to permit the framing of an adequate responsive pleading.' "). It provides that when bringing claims pursuant to the FCA, plaintiffs set forth the " 'who, what, when, where, and how' of the alleged fraud." *Thompson*, 125 F.3d at

---

4. Relators incorporated by reference all of the outlier allegations from the Third Amended Complaint, which was filed on December 21, 2005. As the Government did not file the current motion challenging the sufficiency of the allegations until November 20, 2006, this means that the Government waited until eleven (11) months after the filing of the complaint containing the relevant allegations to challenge the sufficiency of the allegations.

903. These pleading requirements are relaxed where the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge or when the alleged fraud occurred over a multi-year period. *Id.; United States ex rel. King v. Alcon Labs., Inc.,* 232 F.R.D. 568, 570 (N.D.Tex.2005). In such situations, fraud may be pled by alleging a belief under such circumstances. *Thompson,* 125 F.3d at 903. Nonetheless, the Fifth Circuit has held that this exception to Rule 9(b)'s requirements " 'must not be mistaken for a license to base claims of fraud on speculation and conclusory allegations.' " *Id.* Even where Rule 9(b)'s requirements are relaxed and the allegations are based on information and belief, the complaint must still set forth a factual basis for the belief. *Id.*

The right to object to pleadings based upon Rule 9(b) is not absolute. *See, e.g., Lasercomb Am., Inc. v. Reynolds,* 911 F.2d 970, 980 (4th Cir.1990); *Berk–Cohen Ass'n v. Orkin Exterminating Co.,* 2004 WL 162905, *1 n. 1, 2004 U.S. Dist. LEXIS 694, at *4 n. 1 (E.D.La. Jan. 20, 2004); *Nakano v. Jamie Sadock, Inc.,* 2000 WL 680365, **7–8, 2000 U.S. Dist. LEXIS 7144, at *25–26 (S.D.N.Y. May 25, 2000); *Adams v. NVR Homes, Inc.,* 193 F.R.D. at 250; *Heil v. LeBow,* 1993 WL 15032, **2–3, 1993 U.S. Dist. LEXIS 222, at *8–9 (S.D.N.Y. Jan. 13, 1993); *United Nat'l Records, Inc. v. MCA, Inc.,* 609 F.Supp. 33, 38–39 (N.D.Ill.1984). "A party who fails to raise a Rule 9(b) objection normally waives the requirement." *United Nat'l Records,* 609 F.Supp. at 38–39 (citing 2A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 9.03 (2d ed.1984)); *see also Todaro v. Orbit Int'l Travel, Ltd.,* 755 F.Supp. 1229, 1234 (S.D.N.Y.1991) (quoting *United Nat'l Records,* 609 F.Supp. at 39); *Nakano,* 2000 WL 680365, **7–8, 2000 U.S. Dist. LEXIS 7144, at 25–26 (quoting

*Todaro,* 755 F.Supp. at 1234); *Heil,* 1993 WL 15032, **2–3, 1993 U.S. Dist. LEXIS 222, at *8–9 (same). Indeed, the Fourth Circuit has held that "a court should hesitate to dismiss a complaint under Rule 9(b)" if the court is satisfied that: (1) the defendant has been made aware of the circumstances for which it will have to present a defense at trial and (2) plaintiff has substantial prediscovery evidence of those facts. *Adams,* 193 F.R.D. at 250 (citing *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir.1999)).

■ In the instant case, the Court finds that the Government has waived any Rule 9(b) objection that it may have had. The Government brings this objection [5] four (4) years after the initial complaint was filed, eleven (11) months after the Third Amended Complaint was filed (which complaint contains the allegations relevant to the instant motion to dismiss), and more than one (1) year after its decision *not* to intervene in this case. The Government has had plenty of opportunities to seek earlier intervention and/or dismissal of this case, and yet waited until four (4) months before the discovery deadline to file the instant motion.

The Government has been made well-aware of the circumstances for which it will have to present a defense at trial, if not through the Relators' own pleadings, then by this Court's latest lengthy order discussing the nature of the outlier claims. Moreover, Relators had substantial prediscovery evidence of the facts concerning the outlier claim, as more fully discussed in this Court's previous order.

Finally, this Court finds no merit to the Government's argument that "[t]he United States cannot meaningfully fulfill its statutory obligation to investigate a relator's

---

**5.** And each and every complaint filed in this case.

allegations, and to decide whether to intervene and take over those allegations, unless the relator provides sufficient information about the alleged fraud," Gov't's Mot. 9, because at the time of filing the instant motion, the Government had already made its decision not to intervene. Again, this Court tires of the continual delays in this case and will tolerate them no longer.

For the reasons set forth above, the Government's Motion is denied.

## 2. Anti–Kickback Claim

Tenet argues that Relators' anti-kickback claim should be dismissed pursuant to Rule 9(b) because although Relators have added more detail to their Fourth Amended Complaint, they have still failed to demonstrate first-hand knowledge of alleged kickback violations. Tenet's Mot. 10. Specifically, Tenet argues that Relators have not pled that Tenet employees made statements regarding referrals, that discussions took place regarding referrals, or that there was any interaction between Tenet employees and physicians regarding referrals. *Id.* at 9. Tenet argues that Relators have similarly failed to allege the "how, what, where, and when" requirements with the requisite specificity. *Id.* at 10.

Relators respond by arguing that Tenet advocates an unnecessarily strict interpretation of Rule 9(b), and that they have generally pled the "who, what, when, where, and how" with requisite specificity. Relators allege that the Court found only that Relators were required to identify the specific physicians who made referrals, rather than the Tenet employee who provided the remuneration, that the Court can imply the fair market value of the referrals was above $0.00, and that they remedied deficiencies in pleading the "how" and "what" requirements by identifying two patients who were illegally referred. Relators' Resp. to Tenet 6–12.

As stated above, Rule 9(b) provides that when bringing claims pursuant to the FCA, plaintiffs set forth the " 'who, what, when, where, and how' of the alleged fraud." *Thompson,* 125 F.3d at 903. With respect to these requirements, the Fifth Circuit has held that "Rule 9(b) requires that the plaintiff allege 'the particulars of time, place, and contents of the false representations,' ... as well as the identity of the person making the misrepresentation and what that person obtained thereby, otherwise referred to as the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Willard v. Humana Health Plan of Tex.,* 336 F.3d 375, 384 (5th Cir.2003); *see United States ex rel. Joshi v. St. Luke's Hosp., Inc.,* 441 F.3d 552, 556 (8th Cir.2006) ("To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."); *see also Rockwell Int'l Corp. v. United States,* No. 05–1272 (U.S. decided Mar. 27, 2007) (detailing relators' knowledge requirement).

█ In the instant case, Relators have not identified any Tenet employee who allegedly offered remuneration to the referring physicians, thereby providing an incomplete picture of the alleged fraud. Neither have they provided sufficient information to discern that the directorships and financial arrangements made between Tenet and the referring physicians were illegal or made for the purpose of inducing referrals. Furthermore, Relators failed to link the allegedly fraudulent scheme with the submission of actual claims or charges to the Government. *See, e.g., United States ex rel. Clausen v. Lab. Corp. of Am.,* 290 F.3d 1301, 1313 (11th Cir.2002).

In sum, this Court finds that Relators have failed to specifically allege circumstances and events, which would convert some of Tenet's seemingly legitimate activities into a fraudulent scheme.

■ Moreover, although Relators state that this Court found "only that Relators are required to identify specific physicians who made the referrals," Relators' Resp. to Tenet 8, this Court found no such thing. Rather, this Court found that Relators failed to allege the "who" requirement with requisite specificity and cited *Thompson's* requirement that Relators allege the specific physicians making referrals as merely an example of how Relators failed to meet the requirements of Rule 9(b). Aug. 15, 2005 Order 22–23. It is not the Court's responsibility to sift through Relators' complaint and identify each and every short-coming. Rather, once this Court holds that a complaint is insufficiently pled, it is the duty of the attorneys drafting the complaint to conduct research into pleading requirements and then convert that research into practice. In this case, Relators have failed to do either.

As this Court has already granted Relators leave to amend once, and as they have failed to meet the requisite pleading standard again, this Court hereby dismisses the anti-kickback claim with prejudice.

**D. Release from Outlier Claim**

Tenet argues that the outlier claim against it should be dismissed because it settled all issues related to the outlier claim with the Government, and thus any remaining dispute over settlement proceeds is between Relators and the Government. Tenet's Mot. to Dismiss Relators' FAC 4–5. In other words, Tenet argues that there is no live case or controversy left between itself and Relators, and therefore the claim should be dismissed. Reply in Support of Tenet's Mot. to Dismiss 2.

Tenet cites no authority in support of this argument.

Relators respond by arguing that the Court should retain jurisdiction over the outlier claim because Relators had a right under § 3730(c)(2)(B) to a hearing concerning whether the settlement was fair, adequate, and reasonable, which Tenet and the Government abridged by failing to notify them of the settlement agreement. Relators' Opp'n to Def.'s Mot. to Dismiss 2–4 ("Relator's Resp. to Tenet"). Though Relators acknowledge that this is a murky procedural situation, they argue that responsibility for this situation lies with Tenet and the Government for failing to notify Relators of the settlement in accord with the statute. *Id.* at 4. Relators argue that they have a right to object to and possibly obtain a share in the settlement proceeds. *Id.* at 3–4.

■ Under the FCA, prevailing Relators are entitled to between fifteen and twenty-five percent of the proceeds of a *qui tam* action or settlement if the Government intervenes, and twenty-five to thirty percent if the Government does not intervene. *Ridenour*, 397 F.3d at 931 (discussing 31 U.S.C. § 3730(d)). In addition, Relators are given certain guarantees of involvement when they file *qui tam* actions, including: (1) the right to continue as a party if the Government proceeds with the action, (2) the right to a hearing if the Government moves to dismiss the claim over relators' objections, and (3) the right to a judicial determination and hearing regarding whether the settlement agreement is fair, adequate, and reasonable if the Government settles the claim. *Id.* (discussing 31 U.S.C. § 3730(c) and S.Rep. No. 99–345, at 25–26 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5290–91). Moreover, the Government is required to notify Relators prior to settlement to allow time for the Relators to

request a hearing to determine whether the settlement is equitable. *See, e.g., United States ex rel. Smith v. Gilbert Realty Co.*, 9 F.Supp.2d 800, 802 (E.D.Mich. 1998) (chastising government for entering into settlement without notifying the relator or her counsel). Indeed, in a case where the government did not notify the relator or her attorney prior to settling a claim, the court found that the United States had "perpetrated a gross injustice on them," had committed "an egregious oversight," and that the rights of the relator and her attorney had been "severely violated." *Id.*

■ In the instant case, the Government failed to notify the Relators prior to settlement and there has not been a hearing to determine whether the settlement agreement is equitable. Of course, whether or not these actions constitute a violation of Relators' rights turns on whether or not they are proper Relators who pass the jurisdictional bar discussed in this Court's earlier order. Nonetheless, the Court agrees with Relators that "[i]t is this Court's purview, not the Government's[,] to make [the determination of whether or not these are proper Relators.]" Relators' Resp. to Tenet 3. In other words, it is not the Government's place to fail to accord certain rights to Relators merely upon its own belief that they are not proper relators. The determination must first be made by this Court.

Instead of allowing this Court to make such a determination, the Government and Tenet have engaged in negotiations outside of and without the involvement of this Court. In light of the procedural history of this case and the lack of case law regarding the proper procedure to follow in this situation, the Court is not prepared to dismiss Tenet from the case. Though Tenet presents a good argument, there is still a possibility that the Relators may prove to be genuine, that they may have a

right to object to the settlement agreement, that the Court may find a problem with the settlement agreement, and that the settlement agreement may not fully and finally resolve all issues related to the outlier claim. Accordingly, Tenet's motion is denied with respect to the outlier claim.

## III. CONCLUSION

For the reasons set forth above, Defendant USA's Motion to Intervene (Doc. No. 118) is **GRANTED;** Defendant USA's Motion to Dismiss (Doc. No. 116) is **DENIED;** and Defendant Tenet's Motion to Dismiss (Doc. No. 101) is **DENIED** in part as to the outlier claim but **GRANTED** in part as to the anti-kickback claim.

**SO ORDERED.**